CITY OF BRIDGEPORT *v.* BARBOUR-DANIEL
ELECTRONICS, INC.
(5852)

DUPONT, C. J., BORDEN, SPALLONE, DALY, BIELUCH, O'CONNELL,
STOUGHTON, NORCOTT and FOTI, Js.

Submitted on briefs March 2 and argued June 28[1]—decision
released October 4, 1988

*John H. Barton,* associate city attorney, for the appellant (plaintiff).

*David M. McHugh,* with whom, on the brief, was
*K. Wynne Bohonnon,* for the appellee (defendant).

DUPONT, C. J. The plaintiff landlord appeals from a judgment of dismissal in this summary process action. The dispositive issue on appeal is whether a second notice to quit possession for nonpayment of rent may serve as the basis for a summary process action when a prior notice to quit possession for nonpayment of rent was statutorily defective. We conclude in this case that, because the first notice to quit possession was a nullity, it did not have the effect of terminating the lease, and, therefore, the second notice to quit was properly based upon the defendant tenant's failure to pay rent

---

[1] On the date this case was originally scheduled for oral argument, the parties requested, and the court granted, a waiver of oral argument. Subsequently, the court, sua sponte, ordered the parties to argue before this court, en banc, the issue of "whether a notice to quit may effectively be issued and a judgment of possession be rendered for the tenant's failure to pay the fair rental value for use and occupancy."

for which a summary process action may be maintained pursuant to General Statutes § 47a-23.[2] We therefore find error.

This case involves the following undisputed facts. The plaintiff is the owner and landlord of Sikorsky Memorial Airport in Stratford. The defendant is a tenant at that location. On August 1, 1977, the parties entered into a lease agreement which expired on July 31, 1980. The defendant tenant continued to occupy the premises after the expiration of the lease and made monthly rental payments until April, 1985. On April 30, 1986, the plaintiff issued a notice to quit possession on or

[2] "[General Statutes] Sec. 47a-23. (Formerly Sec. 52-532). NOTICE TO QUIT POSSESSION OF PREMISES. FORM. SERVICE. (a) When a rental agreement or lease of any land or building or of any apartment in any building, or of any dwelling unit, or of any trailer, or any land upon which a trailer is used or stands, whether in writing or by parol, terminates by lapse of time, or by reason of any expressed stipulation therein, or under the provisions of section 47a-15a, or as a result of a violation of section 47a-11, or where such premises, or any part thereof, is occupied by one who has no right or privilege to occupy such premises, or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated, and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease, if any, or at any subsequent time, he or they shall give notice to the lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.

"(b) The notice shall be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you, on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy, also the date and place of signing notice). . . .'"

General Statutes § 47a-15a provides: "NONPAYMENT OF RENT BY TENANT: LANDLORD'S REMEDY. If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive."

before June 1, 1986, for failure to pay rent. This notice, which was served on the defendant on May 1, 1986, contained the statement: "Any monies accepted after service of this notice are accepted as use and occupancy only, and not as rent." The plaintiff did not pursue a summary process action based on this notice. Recognizing that the May 1, 1986 service of that notice did not comply with the requirement that it be served in the same month in which it was issued, the plaintiff, on June 11, 1986, issued a second notice to quit possession of the premises on or before June 23, 1986, for the defendant's failure to pay rent. This notice was served on the defendant on June 12, 1986.

A writ, summons and complaint based on the second notice to quit possession was served on the defendant on June 25, 1986, with a return date of July 2, 1986. This complaint alleged that the written lease between the parties for a monthly rental of $1080 had expired on July 31, 1980, and that the defendant had retained possession of the premises under a month-to-month tenancy on the same terms as set forth in the written lease agreement. It also alleged that "[t]he defendant has not paid the sums due for the use and occupancy commencing April, 1985 through and including June, 1986." On July 10, 1986, the defendant filed a motion to dismiss this original complaint for lack of subject matter jurisdiction on the ground that there is no statutory basis for eviction for the failure to pay use and occupancy. In a supporting memorandum of law, the defendant cited General Statutes § 47a-23 for the propositions that § 47a-23 expressly sets forth the sole grounds for eviction, and the failure to pay use and occupancy is not one such ground. See footnote 2, supra. On the same date, the plaintiff filed an amended complaint, alleging that "[t]he defendant has not paid the sums *due for rent* and/or use and occupancy com-

mencing April, 1985 through and including June, 1986."[3] (Emphasis added.)

On January 30, 1987, the defendant filed a second motion to dismiss with a supporting memorandum of law. In its motion, the defendant asserted that the first notice to quit terminated any obligation to pay rent thereafter, and that the second notice to quit therefore could only have been based on a failure to pay use and occupancy. The defendant maintained, accordingly, that "[s]ince the notice to quit possession is based upon nonpayment of rent and no rent was due, only use and occupancy, this action must fail since there is no statutory basis under [General Statutes § 47a-23] upon which to base this summary process action." On February 3, 1987, the plaintiff filed a statement in opposition to the motion to dismiss, claiming that because the first notice to quit was served in an untimely manner, it was null and void, and therefore did not have the effect of terminating the defendant's obligation to pay rent. After a hearing on the motion to dismiss held on February 6, 1987, the court granted the defendant's motion, and rendered a judgment of dismissal.[4] This appeal followed.[5]

[3] On July 11, 1986, the plaintiff, in opposition to the defendant's motion to dismiss, claimed that the motion was moot because of the filing of the amended complaint and that it was made for dilatory purposes. The record does not indicate any action of the trial court with respect to that motion.

[4] At the hearing on the defendant's motion to dismiss, the trial court stated that "a notice to quit has several purposes. An invalidity [as to] one of those purposes doesn't necessarily mean that it is invalid for all purposes." The court held, accordingly, that "once you've given notice that the lease has ended, if its unequivocal, then that lease has ended, but you may not have conferred jurisdiction on the court."

[5] We note that the plaintiff did not file its memorandum of law in opposition to the motion to dismiss at least five days before the motion was considered by the court. This court's recent decision in Burton v. Planning Commission, 13 Conn. App. 400, 536 A.2d 995 (1988), would seem to require that the trial court's granting of the motion to dismiss be affirmed on this ground. We conclude, however, that the rule announced in Burton and the strict requirement of Practice Book § 143 that "[a]n adverse party who fails

On appeal, the parties do not dispute the fact that upon the expiration of their written lease they entered into a month-to-month tenancy as evidenced by their conduct. For a duration of approximately five years, the defendant tendered payment each month as rent, and the plaintiff accepted each tender as the payment of rent. See, e.g., *Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 288, 158 A. 548 (1932); *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 506, 69 A. 12 (1908); see generally *Welk* v. *Bidwell,* 136 Conn. 603, 607–609, 73 A.2d 295 (1950); see also General Statutes §§ 47a-3b and 47a-3d.[6] Further, the parties do not dispute the fact that at the time the first notice to quit

timely to file such a memorandum . . . shall be deemed by the court to have consented to the granting of the motion" are not applicable to a summary process case.

The holding in *Burton* and the requirements placed on the nonmovant by § 143 must be read in conjunction with the requirement of Practice Book § 142 that "[e]xcept in summary process matters, the motion [to dismiss] shall be placed on the short calendar *to be held not less than fifteen days* following the filing of the motion . . . ." (Emphasis added.) In an ordinary civil action, Practice Book §§ 142 and 143 together ensure that a plaintiff will have at least ten days to respond to a motion to dismiss. In a summary process action, however, matters move more quickly. General Statutes § 47a-26c. The plaintiff does not have the fifteen day period provided by Practice Book § 142. Thus, the strict requirement of Practice Book § 143 is not applicable to a summary process action.

In the present case, where the motion to dismiss was considered by the court only six days after its filing, compliance with the time requirements of § 143 for the filing of a memorandum in opposition to the motion was not required. It was sufficient that the plaintiff filed its memorandum in opposition to the motion sufficiently in advance of the hearing to permit the defendant to have a meaningful opportunity to respond to the plaintiff's opposition at the hearing.

[6] General Statutes § 47a-3b provides: "Unless the rental agreement fixes a definite term, the tenancy is month to month, except in the case of a tenant who pays weekly rent, then the tenancy is week to week."

General Statutes § 47a-3d provides: "Holding over by any lessee, after the expiration of the term of his lease, shall not be evidence of any agreement for a further lease. Parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only."

was served, a month-to-month tenancy was still in existence. Nor do the parties dispute the fact that the first notice to quit was served in an untimely manner and, therefore, could not constitute the basis of a summary process action for the nonpayment of rent. See, e.g., *Welk* v. *Bidwell,* supra, 606–607; *Tehrani* v. *Century Medical Center,* 7 Conn. App. 301, 305, 508 A.2d 814 (1986). Thus, both parties agree that the first notice to quit, which was served in May but based upon an April nonpayment of rent, was defective and could not have been a proper basis for a summary process action.

The parties do dispute, however, the legal consequences and effect of the first notice to quit upon the month-to-month tenancy in light of the unequivocal statements therein that the lease was terminated and that "[a]ny monies accepted after service of this notice are accepted as use and occupancy only, and not as rent." The plaintiff argues that the statements had no effect on the month-to-month lease agreement because the entire notice to quit was null and void, and, therefore, no statement in it had any legal consequence. The plaintiff claims that since the first notice to quit was defective, and was not the basis upon which its amended complaint seeking summary process rested, the first notice is null and void for all purposes. The plaintiff, therefore, argues that the first notice to quit did not have the effect of terminating the lease, and, therefore, the second notice based on nonpayment of rent was sufficient to support the summary process action. The defendant, on the other hand, argues that the defective notice to quit had the effect of terminating the lease agreement and creating a tenancy at sufferance. It therefore argues that the second notice to quit could be based only on the failure to pay use and occupancy, which failure cannot support a summary process action.

There are two separate questions presented by this appeal. The first question is what effect the admittedly invalid notice to quit had on the tenancy between the parties. If we conclude that the month-to-month tenancy was not terminated, the nonpayment of rent alleged in the second notice to quit is sufficient to support the plaintiff's summary process action. Only if we conclude that a tenancy at sufferance was created by the service of the first notice to quit do we need to consider the second question of whether a summary process action can be maintained against a tenant who has failed to tender use and occupancy payments to the landlord. We conclude that the first notice to quit did not have the effect of terminating the month-to-month lease agreement between the parties, and, therefore, we need not address the second question.[7]

The purpose of summary process proceedings is to permit the landlord to recover possession of the premises upon termination of a lease without experiencing the delay, loss, and expense to which he might be subjected under a common law cause of action. "The process is intended to be summary and is designed to provide an expeditious remedy to a landlord seeking possession." *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973). "We have recog-

[7] Although we need not address this issue, we note that had we been confronted with deciding the issue, we would have concluded, as does the dissent, that the nonpayment of use and occupancy is not a proper ground for eviction and, therefore, cannot sustain a summary process action. A recent opinion of this court included the statement that a tenant's failure "to pay rent *or* a fair rental value for use and occupancy for the month . . . General Statutes § 47a-3c; authorized the [landlord] to issue a notice to quit possession under the provisions of General Statutes § 47a-23 (a) . . . preliminary to an action for summary process." (Emphasis in original; footnote omitted.) *Housing Authority* v. *Hird,* 13 Conn. App. 150, 158, 535 A.2d 377 (1988). We do not believe that the quoted statement is a precise statement of our law. A tenant's failure to pay a fair rental value or any amount as use and occupancy cannot be the basis for the maintenance of a summary process action.

nized the principle that, because of the summary nature of its remedy, the summary process statute must be narrowly construed and strictly followed. *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 452, 473 A.2d 318 (1984)." *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 631–32, 495 A.2d 1127 (1985); *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 600–601, 96 A.2d 217 (1953); *Vogel* v. *Bacus,* 133 Conn. 95, 97, 48 A.2d 237 (1946). The failure to comply with the statutory requirements deprives a court of jurisdiction to hear the summary process action. *Windsor Properties, Inc.* v. *Great Atlantic & Pacific Tea Co.,* 35 Conn. Sup. 297, 301, 408 A.2d 936 (1979).

The statutory notice to quit possession of leased premises is a condition precedent to the bringing of a summary process action by the lessor. *O'Keefe* v. *Atlantic Refining Co.,* 132 Conn. 613, 622, 46 A.2d 343 (1946). The May 1, 1986 notice to quit was invalid because it was not served in the same month in which it was issued. *Tehrani* v. *Century Medical Center,* supra. " 'Invalid,' according to Ballentine's Law Dictionary, means: 'Illegal, having no force or effect or efficacy; void; null.' Webster, Seventh New Collegiate Dictionary, defines 'invalid' as 'being without foundation or force in fact, truth or law.' Because the notice to quit of [May 1] had no effect, it could not have terminated the lease." *Marrinan* v. *Hamer,* 5 Conn. App. 101, 104, 497 A.2d 67 (1985). When the notice to quit has no effect, it cannot terminate a lease, and, therefore, cannot be the basis for the granting of the motion to dismiss in this case. Id., 104.

Although the statements contained in the first notice to quit stating that the lease was terminated and that only use and occupancy payments would be accepted were unequivocal, the claimed consequence of such

statements, namely, the termination of the lease,[8] was negated by the invalidity of the notice to quit.[9] Without a valid notice to quit, there can be no foundation for a summary process action. *Sandrew* v. *Pequot Drug, Inc.*, supra. Although many unequivocal acts may be sufficient to terminate all rights arising under a lease, the only foundation for a summary process action is

---

[8] A breach of a covenant to pay rent does not automatically result in the termination of a lease. *Rosa* v. *Cristina*, 135 Conn. 364, 366, 64 A.2d 680 (1949). The failure to pay rent gives the landlord a right to terminate the lease. Id. In order to terminate a lease, a landlord must perform some unequivocal act which clearly demonstrates his intent to terminate the lease. *Chapel-High Corporation* v. *Cavallaro*, 141 Conn. 407, 411, 106 A.2d 720 (1954).

[9] Our decision in *Sandrew* v. *Pequot Drug, Inc.*, 4 Conn. App. 627, 495 A.2d 1127 (1985), is not to the contrary. In *Sandrew*, the plaintiff landlord sent the defendant tenant a letter of termination of the lease for nonpayment of rent. In the letter, the plaintiff stated: "You are hereby advised that your landlord . . . terminates the lease . . . because you have defaulted in the payment of the monthly rent . . . . Any future payments which you might make to the landlord will not be considered to be rent but only reasonable use and occupancy for the premises. I suggest that you call me immediately upon receipt of this letter so that we might discuss a resolution of this matter." Id., 628 n.1.

Although the letter constituted the unequivocal act necessary to terminate the lease, it did not conform to the substantive requirements of General Statutes § 47a-23 (b), and therefore did not constitute a notice to quit. Id., 632. As such, the letter did not furnish a foundation for a summary process action. Id. The letter in *Sandrew* was not only an invalid notice to quit, but it was not a notice to quit at all. The *Sandrew* court stated: "While there is almost no limit to the possible words or deeds which might constitute the unequivocal act necessary to terminate the lease, none of the cases relied upon by the plaintiff supports the proposition that his actions were sufficient to serve as a substitute for the statutory notice to quit. It is conceivable to this court that a lessor might wish to terminate a lease but not wish to institute a summary process action. For example, a lessor might want to terminate a lease in order to extinguish an option to purchase, even though the lessee had moved from the premises so that a summary process action was unnecessary. In such a circumstance, any type of unequivocal act would be sufficient to terminate all rights arising under a lease although not furnishing a foundation for a summary process action." Id., 631. The present case, however, involves a notice to quit which is invalid as it was untimely served. It, therefore, was not only ineffectual upon which to base a summary process action, but was also ineffectual to terminate the lease.

a notice to quit. Id., 631. This case is a summary process action. The first notice to quit was invalid as untimely served. It was ineffectual as a basis for a summary process action. It matters not that the plaintiff regarded the tenancy as terminated in the first notice to quit but whether, as a matter of law, the first notice to quit, in fact, terminated the tenancy. We conclude that it did not.

"[T]he necessary and only basis of a summary process proceeding is that the lease has terminated." *Webb* v. *Ambler,* 125 Conn. 543, 550, 7 A.2d 228 (1939); *Feneck* v. *Nowakowski,* 146 Conn. 434, 436, 151 A.2d 891 (1959). If that is so, and given the necessity of a notice to quit to the commencement of a summary process action, it is illogical to conclude that an invalid notice to quit has the effect of terminating a lease, while at the same time concluding that an invalid notice to quit cannot sustain a summary process action.

We conclude that the first notice to quit was invalid for all purposes, including the termination of the month-to-month tenancy.[10] We, therefore, also conclude that the plaintiff properly served the second notice to quit based on the defendant's duty to pay rent as a month-to-month tenant.

Our conclusion also follows from the fact that a lease is a contract. "In the case of a rental on a month-to-

---

[10] "A notice to quit may serve several functions: (1) as an unequivocal manifestation by the lessor that he terminates the rental agreement; *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 686, 460 A.2d 1311 (1983); (2) as an indication that any holding over by the tenant after the expiration of the monthly tenancy will not be acquiesced in by the lessor; *Welk* v. *Bidwell,* 136 Conn. 603, 607–608, 73 A.2d 295 (1950); and (3) as compliance with the statutory requirement that a period of eight days pass between the termination of the agreement and the bringing of a summary process action. General Statutes § 47a-23a; *Hour Publishing Co.* v. *Gorez,* 5 Conn. Cir. Ct. 419, 421, 254 A.2d 919 (1968)." *Messinger* v. *Laudano,* 4 Conn. App. 162, 163–64, 493 A.2d 255, cert. denied, 196 Conn. 812, 495 A.2d 279 (1985).

month basis the tenancy is not regarded as a continuous one. The tenancy for each month is one separate from that of every other month. *Corrigan* v. *Antupit,* 131 Conn. 71, 76, 37 A.2d 697 [1944]; *Chipman* v. *National Savings Bank,* 128 Conn. 493, 497, 23 A.2d 922 [1942]; *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 506, 69 A. 12 [1908]. For each month, therefore, there must be a new contract of leasing." *Welk* v. *Bidwell,* supra, 606–607; *Hour Publishing Co.* v. *Gorez,* 5 Conn. Cir. Ct. 419, 421, 254 A.2d 919 (1968) (tenancy from month-to-month is not a continuing right of possession, but ends and recommences at expiration of every month).

The reason why the notice to quit was defective in this case was because it was served in an untimely manner. Each new month of a tenancy is a separate contract. A failure to pay rent in one month cannot be acted upon in the next month since there is a creation of a new contract. An untimely notice to quit, therefore, cannot terminate a lease that has previously lapsed. After receiving the first notice to quit possession, the defendant was still under an obligation to pay rent as a month-to-month tenant.

The second notice to quit terminated the defendant's status as a month-to-month tenant and created a tenancy at sufferance, thereby furnishing a basis for the plaintiff's summary process action. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961); *Rivera* v. *Santiago,* 4 Conn. App. 608, 610, 495 A.2d 1122 (1985); *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 686, 460 A.2d 1311 (1983). The trial court erred in dismissing the plaintiff's action for lack of subject matter jurisdiction.

There is error, the case is remanded to the trial court with direction to vacate the judgment of dismissal and

to reinstate the plaintiff's summary process action against the defendant.

In this opinion SPALLONE, DALY, O'CONNELL, STOUGHTON, NORCOTT and FOTI, Js., concurred.

BIELUCH, J., concurring. I concur in the majority opinion, but disagree with footnote 7 therein.

General Statutes § 47a-3c provides: "In the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit." Accordingly, the failure to pay rent *or* a fair rental value may serve as the basis for a summary process action. *Housing Authority* v. *Hird,* 13 Conn. App. 150, 158, 535 A.2d 377 (1988).

The dissent errs in its conclusion that "[t]he plaintiff here sought to do what was permitted in *Hird*— evict a tenant for the failure to make a use and occupancy payment to the landlord." The tenant in *Hird* appealed from a judgment of possession for her landlord in a summary process action based on nonpayment of rent. We upheld the trial court's judgment, finding that the lease between the landlord and the tenant was still in effect. Additionally, we held that *even if* the tenant believed that her obligation to pay rent pursuant to the lease had ended, her duty to pay a fair rental value for her use and occupancy of her apartment remained. "Even though a tenant at sufferance is excused from a duty to pay the stipulated rent under the lease, the obligation to pay a fair rental value for the use and occupancy of the dwelling unit remains. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 131, 357 A.2d 910 (1975); *Rivera* v. *Santiago,* [4 Conn. App. 608, 610, 495 A.2d 1122 (1985)]. Therefore, even if the defendant believed that the lease had ended and that she was relieved from a duty to pay a stipulated rent, her obligation to pay for her use and

occupancy of the premises continued. Her failure to pay rent *or* a fair rental value for use and occupancy . . . General Statutes § 47a-3c; authorized the plaintiff to issue a notice to quit possession under the provisions of General Statutes § 47a-23 (a) . . . preliminary to an action for summary process." (Emphasis in original; footnote omitted.) *Housing Authority* v. *Hird,* supra, 158.

Under § 47a-3c, enacted in 1979; Public Acts 1979, No. 79-571, § 7; the fair rental value for use and occupancy by the tenant is now the equivalent of rent where there is no agreement as to the amount. No longer is there a distinction between them for eviction purposes, except as to the determination of the amount to be paid. The enactment of § 47a-3c has altered the fabric of the law relating to summary process.

BORDEN, J., dissenting. I agree with the majority that this appeal presents two questions: (1) whether the plaintiff's defective notice to quit nonetheless created a tenancy at sufferance; and (2) if so, whether a summary process action may be maintained for a tenant's failure to make use and occupancy payments to its landlord. The majority answers the first question in the negative, and thus does not reach the second except by way of dictum. See footnote 7, supra. I answer the first question in the affirmative and, reaching the second on its merits, agree with the majority's dictum that the proper answer to the second question is in the negative. I conclude that the trial court did not err in dismissing the plaintiff's complaint.[1] I therefore dissent.

## I

After the parties' rental agreement expired in 1980, a month-to-month tenancy at will was created. Gen-

---

[1] I agree with the procedural point of the majority; see footnote 5, supra; that the strict requirement of Practice Book § 143 does not apply to a summary process action.

eral Statutes §§ 47a-3b and 47-3d. I agree that the first notice to quit, served in May but based upon an April nonpayment of rent, was defective and could not have been a proper basis for a summary process action. *Tehrani* v. *Century Medical Center,* 7 Conn. App. 301, 305, 508 A.2d 814 (1986). The majority and I differ regarding the effect that service of the invalid notice to quit had upon the subsequently served notice to quit, which alleged nonpayment of rent in the succeeding month and which was served in the month of the alleged nonpayment. I conclude that the service of the first notice to quit was nonetheless effective to terminate the month-to-month tenancy at will and convert it to a tenancy at sufferance.

## A

The majority concludes that, since the first notice to quit was defective, it was a nullity and therefore was not relevant to a summary process action based on a subsequent notice to quit. I disagree.

A notice to quit possession based on nonpayment of rent serves several functions. It is a formal notice to the tenant that the landlord has terminated the rental agreement, that the landlord will not acquiesce to the tenant holding over, and that the landlord has complied with the statutory prerequisite to a summary process action. *Messinger* v. *Laudano,* 4 Conn. App. 162, 163, 493 A.2d 255, cert. denied, 196 Conn. 812, 495 A.2d 279 (1985). Although a late served notice to quit is insufficient to form the basis for the bringing of a summary process action; *Tehrani* v. *Century Medical Center,* supra; it still constitutes an "unequivocal act [by the landlord which] would be sufficient to terminate all rights arising under a lease although not furnishing a foundation for a summary process action." *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 631, 495 A.2d 1127 (1985). Accordingly, far from being a nullity, the

service of the first notice to quit by the plaintiff, which was unequivocal in its terms, was effective to communicate to the defendant that the plaintiff regarded the tenancy at will to have been terminated.

The majority reasons that because, in the case of a month-to-month tenancy, a notice to quit for nonpayment of rent must be served during the month in which the nonpayment occurred in order to serve as the basis of a summary process action, only a notice to quit served in the month of nonpayment may serve to terminate a rental agreement. This reasoning, however, improperly equates two roles of the notice to quit: (1) "as compliance with the statutory [prerequisite to] a summary process action"; and (2) as a formal notice to the tenant that the landlord has "terminate[d] the rental agreement." *Messinger* v. *Laudano,* supra, 163. These functions are separate and distinct. *Sandrew* v. *Pequot Drug, Inc.,* supra, 631.

The majority's view that a defective notice to quit based upon nonpayment of rent is without consequence ignores the fact that the notice, by its words, is still an unequivocal communication from the landlord to the tenant. Whether that official notice, delivered by a proper officer or indifferent person, can mean what it plainly says is a determination that can be made only by those sufficiently trained in our landlord tenant law. Tenants often and reasonably believe what landlords say. It is inevitable that tenants will rely on defective notices to quit, either by abandoning the premises or by failing to tender payment which, as the official notice stated in this case, will be "accepted as use and occupancy only and not as rent." The majority's holding that a landlord may issue a notice to quit and avoid the legal consequence of terminating the tenancy increases the potential for abuse of our summary process law. It excuses the landlord from the most obvious consequence that such a notice should reasonably have, and

rewards the landlord for its own invalid action. By doing so, the majority has increased the incentive to issue such notices, even when their lack of legal effect is evident, in the hopes that the untrained tenant might believe what he reads.[2]

The conclusion that I reach, namely, that service of a defective notice to quit alleging nonpayment of rent serves nonetheless to communicate to the tenant that the landlord regards the tenancy as terminated, has the virtue of promoting certainty in the relationship between landlord and tenant. Upon service of the notice to quit for nonpayment of rent, both parties may regard the tenancy as having been terminated, with the resulting change in the obligation to pay rent. See part IB, infra. The tenant need not make a legal determination regarding the validity of the notice in order to know that rent is no longer due. Instead, the tenant may focus upon defending against a summary process action, if any is instituted, knowing that it will be liable in the interim for use and occupancy payments only. Similarly, so long as the landlord maintains that the tenancy is terminated, the landlord is held to this unequivocal act of terminating the tenancy and to the consequences that follow from this act by operation of law.

Nor do I read *Marrinan* v. *Hamer,* 5 Conn. App. 101, 497 A.2d 67 (1985), to require that the first notice to

---

[2] I do not read the majority to preclude a tenant from asserting the defense of equitable estoppel under facts like those presented in this case. Where a landlord's conduct involves more than the simple service of an invalid notice to quit but also includes statements or actions that indicate the landlord's view that the tenancy has terminated, a tenant's reasonable reliance thereon in failing to tender rent thereafter may constitute the basis of an equitable estoppel defense to bar the landlord's action for possession based upon nonpayment of rent. See *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 447, 473 A.2d 318 (1984); *Steinegger* v. *Fields,* 37 Conn. Sup. 534, 537, 425 A.2d 597 (1980). Since this case was dismissed before trial, the matter of special defenses available to the defendant was not addressed by the trial court.

quit in this case must be viewed as a nullity. The majority applies the conclusion of *Marrinan* to the facts of this case without taking into account the different factual situations presented by the two cases.

In *Marrinan,* two notices to quit possession were served on the tenant at different times. The first notice, based on a material noncompliance by the tenant, was ineffective because of a failure to comply with the notice requirements of General Statutes § 47a-15.[3] The second notice, served two weeks later, was based on lapse of time because the parties' written lease was to expire at the end of the month. This court concluded that because the first notice to quit did not comply with the

[3] "[General Statutes] Sec. 47a-15. NONCOMPLIANCE BY TENANT. LANDLORD'S REMEDIES. Except in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on nonpayment of rent or based on conduct by the tenant which constitutes a serious nuisance, if there is a material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises, or if there is a material noncompliance by the tenant with the rental agreement or a material noncompliance with the rules and regulations adopted in accordance with section 47a-9, the landlord may deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than thirty days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within twenty-one days the rental agreement shall terminate except that (1) if the breach is remediable by repairs or the payment of damages and the tenant adequately remedies the breach within such twenty-one-day period, the rental agreement shall not terminate; or (2) if substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive. For the purposes of this section, 'serious nuisance' means (A) inflicting bodily harm upon another tenant or the landlord or threatening to inflict such harm with the present ability to effect the harm and under circumstances which would lead a reasonable person to believe that such threat will be carried out, (B) substantial and wilful destruction of part of the dwelling unit or premises, (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord, or (D) using the premises for prostitution or the illegal sale of drugs."

statute, it was ineffective and "could not have terminated the lease." Id., 104.

The distinction between *Marrinan* and this case is that between a notice to quit possession that is based on nonpayment of rent and one which arises out of a tenant's material noncompliance. Our law has long recognized that the tenant's act of nonpayment of rent gives the landlord the option to terminate the rental agreement by some unequivocal act clearly showing the exercise of that option. *Mayron's Bake Shop, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961); *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720 (1954); *Thompson* v. *Coe,* 96 Conn. 644, 651, 115 A. 219 (1921); *Simsbury Turnpike Realty Co.* v. *Great Atlantic & Pacific Tea Co.,* 39 Conn. Sup. 367, 370, 465 A.2d 331 (1983). Service of the statutory notice to quit possession is sufficient to effect this termination. *Borst* v. *Ruff,* 137 Conn. 359, 361, 77 A.2d 343 (1950). General Statutes § 47a-15a codifies this rule: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter, the landlord may terminate the rental agreement in accordance with the provisions of [General Statutes] sections 47a-23 to 47a-23b, inclusive." Under circumstances of a nonpayment of rent, the termination of the rental agreement and service of the notice to quit is a *one step* process, with the only precondition being the tenant's nonpayment of rent and the expiration of the statutory nine day grace period set forth in § 47a-15a.

Where the basis of the landlord's actions is the tenant's noncompliance, however, a *two step* process is required. First, the landlord must send the written notice of termination that complies with § 47a-15. Then, if the tenant fails to take appropriate remedial action within twenty-one days, the landlord may serve a notice to quit pursuant to § 47a-23 upon the termination of the rental agreement. Critical to the distinc-

tion between *Marrinan* and this case is the fact that a § 47a-15 notice is a necessary precondition to the landlord's right to serve a notice to quit arising out of the tenant's material noncompliance. In *Marrinan,* this court properly concluded that the first notice to quit, having failed to comply with § 47a-15, could have *no* effect because the lease had not yet been terminated. In the present case, while the first notice to quit possession could not have the primary legal effect that the landlord desired, namely, that of providing a proper basis for a summary process action, it was not without legal effect because it indicated the landlord's exercise of his option to terminate the parties' rental agreement. *Sandrew* v. *Pequot Drug, Inc.,* supra.

B

Once a notice to quit possession based on nonpayment of rent is served, by which the landlord asserts the position that the month-to-month tenancy has terminated, certain legal consequences follow. Chief among these consequences is that "upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance." *Housing Authority* v. *Hird,* 13 Conn. App. 150, 155, 535 A.2d 377 (1988); *Rivera* v. *Santiago,* 4 Conn. App. 608, 610, 495 A.2d 1122 (1985). Additionally, "[a]fter a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit." *Rivera* v. *Santiago,* supra; *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 131, 357 A.2d 910 (1975); see also *Welk* v. *Bidwell,* 136 Conn. 603, 609, 73 A.2d 295 (1950); *Housing Authority* v. *Hird,* supra, 158; General Statutes § 47a-3c; 2 Restatement (Second), Property (Landlord and Tenant) § 14.5.[4]

---

[4] I am particularly puzzled by the majority's conclusion that the first notice to quit possession did not have the effect of terminating the tenancy in light

## C

Thus, when the plaintiff notified the defendant on May 1, 1986, that the defendant was to quit possession of the premises on or before June 1, and that "[a]ny monies accepted after service of this notice are accepted as use and occupancy payments only, and not as rent," it was the plaintiff's unequivocally communicated position that the tenancy at will was terminated and that a tenancy at sufferance had resulted. The defendant was entitled to rely on that position and assume that its obligation was to pay use and occupancy, not rent. Accordingly, rent was not due thereafter until the parties revived or created a tenancy at will. *Welk* v. *Bidwell*, supra, 609; *Housing Authority* v. *Hird*, supra, 158; *Rivera* v. *Santiago*, supra, 610; *Wyngate, Inc.* v. *Bozak, Inc.*, 40 Conn. Sup. 53, 55, 480 A.2d 616 (1984); 2 Restatement (Second), supra. Consequently, since the plaintiff did not withdraw its first notice to quit, or otherwise indicate that the tenancy at sufferance had been converted into a new tenancy at will by an agreement of the parties; see, e.g., *Borst* v. *Ruff,* supra, 362; *Casner* v. *Resnick,* 95 Conn. 281, 286–87, 111 A. 68 (1920); *Fort Orange Barbering Co.* v. *New Haven Hotel Co.,* 92 Conn. 144, 153, 101 A. 505 (1917); *Hartford Wheel Club* v. *Travelers Ins. Co.,* 78 Conn. 355, 359, 62 A. 207 (1905); *Schwartzberg* v. *Arbour,* 22 Conn.

of portions of *Housing Authority* v. *Hird,* 13 Conn. App. 150, 535 A.2d 377 (1988). As I read *Hird,* its conclusion that eviction may lie for the tenant's failure to make use and occupancy payments was predicated upon the view that the second notice to quit in that case, although defective for purposes of a summary process action, did in fact terminate the lease agreement. Id., 158 n.6 and accompanying text, 157–59. The continued viability of that portion of *Housing Authority* v. *Hird,* supra, and the settled case law upon which it relied to conclude that the second notice to quit converted the tenancy to one at sufferance; see *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 128, 131, 357 A.2d 910 (1975); *Rivera* v. *Santiago,* 4 Conn. App. 608, 610, 495 A.2d 1122 (1985); is at odds with the conclusion reached by the majority today.

Sup. 395, 399, 173 A.2d 895 (1961); *Hudson* v. *Kuszynski,* 12 Conn. Sup. 264, 266 (1943); *In re Pickus,* 26 Bankr. 171, 174 (D. Conn. 1982); the defendant was obligated to pay only the fair rental value of the premises for use and occupancy for the month of June, 1986.[5]

## II

In the second notice to quit and the present summary process action maintained thereon, the plaintiff sought to evict the defendant for failure to pay what was due in June, 1986—use and occupancy. I therefore address on the merits the question of whether a summary process action may be based on a failure to pay for use and occupancy. I conclude that it may not.

Recently, a panel of this court stated that a tenant's failure "to pay rent *or* a fair rental value for use and occupancy for the month . . . . General Statutes § 47a-3c; authorized the [landlord] to issue a notice to

[5] This conclusion imposes no real burden on a landlord, because it is within the power of the landlord to take action which would convert a tenant at sufferance into a tenant at will. This may be done, for example, by the acceptance of rent. See General Statutes § 47a-3d; *Borst* v. *Ruff,* 137 Conn. 359, 362, 77 A.2d 343 (1950); *Chipman* v. *National Savings Bank,* 128 Conn. 493, 497, 23 A.2d 922 (1942). Additionally, the lease or tenancy under which the parties operated prior to service of the notice to quit will be revived by a judgment for the tenant in any subsequent summary process action alleging termination of the tenancy by service of that notice to quit; *Housing Authority* v. *Hird,* 13 Conn. App. 150, 156, 535 A.2d 377 (1988); by withdrawal of any subsequent summary process action alleging termination of the tenancy by service of that notice to quit; id., 156–57; by the landlord's communication to the tenant of the withdrawal of the previously served notice to quit; or by any other act by which the landlord clearly acquiesces in the tenant's continued possession of the property. Of course, any payments due between the time the notice to quit was served and the time when the prior tenancy is revived or a new tenancy is created would continue to be in the form of use and occupancy payments, not rental payments. Any payments due after the landlord takes such action would be for rent, the nonpayment of which could be the basis of a summary process action.

quit possession under the provisions of General Statutes § 47a-23 (a) . . . preliminary to an action for summary process." (Emphasis in original; footnote omitted.) *Housing Authority* v. *Hird,* supra, 158. Were I to agree with this language of the *Hird* court, it would be dispositive of this appeal. The plaintiff here sought to do what was permitted in *Hird*—evict a tenant for the failure to make a use and occupancy payment to the landlord. A tenant's nonpayment of rent and a tenant's nonpayment of use and occupancy, however, are not equivalent in the context of a summary process action,[6] and that distinction is critical to the decision of this case.

### A

The starting point of my analysis is the summary process statute itself. The statute clearly distinguishes between rental payments and use and occupancy payments.

First, the statute defines rent as "all periodic payments to be made to the landlord under the rental agreement." General Statutes § 47a-1 (h). Use and occupancy payments, by contrast, arise "[i]n the absence of [a rental] agreement" and are "the fair rental value for the use and occupancy of the dwelling unit." General Statutes § 47a-3c. While in many cases the agreed upon rent and the fair rental value for use and occupancy will be the same dollar amount, the statute distinguishes between the two in terms of how they arise and how they are determined, depending on whether an agreement exists at the time payment is due.

---

[6] It is clear that most of this court now shares this view. See footnote 7, supra, to the majority opinion, with which all but one of the members of the court agree. Because that footnote is dictum, however, and because that point is, by contrast, necessary to the conclusion I reach, I discuss the rationale for that conclusion.

Elsewhere in the statutes, the distinction between rental payments and use and occupancy payments is evident. General Statutes § 47a-26b provides a landlord with a method of ensuring that payments are made into court during the pendency of a summary process action. That statute makes clear that rental payments and use and occupancy payments are distinct legal concepts. It provides, inter alia, that the court may order the tenant to make "payments for use and occupancy in an amount equal to the fair rental value of the premises during the pendency of such action accruing from the date of such order. The last agreed-upon rent shall be prima facie evidence of the fair rental value of the premises"; General Statutes § 47a-26b (b); but either party may prove that such rent "is not the fair rental value." Id.

Furthermore, § 47a-26b (c) provides a specific remedy for a tenant's failure to pay a court ordered use and occupancy to hasten the process to judgment. To hold that a landlord may also use that failure as a separate basis for eviction would be inconsistent with the carefully drawn procedure provided by General Statutes § 47a-26b.

Our case law also recognizes the distinction between rental payments and use and occupancy payments. See, e.g., *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 686–87, 460 A.2d 1311 (1983) (error to award an amount for use and occupancy because the plaintiff, by its complaint, only sought rent, and the right of the plaintiff to recover was limited to the allegations of its complaint); *Wyngate, Inc.* v. *Bozak, Inc.,* supra, 55 (because "a final judgment has been rendered holding that the lease between the parties has not been terminated and is still in full force and effect . . . there is no reason for the continuation of the payment of use and occupancy since only rent is now due the landlord"). The distinction between payments for

rent and payments for use and occupancy, therefore, is firmly rooted in our landlord and tenant jurisprudence.

B

The distinction between rental payments and use and occupancy payments bears directly on the question of whether a summary process cause of action is stated when it is alleged that a tenant has failed to pay use and occupancy. General Statutes § 47a-23 enumerates the situations in which a notice to quit possession may be served and in which an eviction proceeding may be instituted thereafter pursuant to General Statutes § 47a-23a. The following statutory bases for a notice to quit are set forth in § 47a-23: (1) termination of the lease agreement by lapse of time; (2) termination of the lease agreement by reason of any express stipulation in the agreement; (3) termination of the rental agreement under the provisions of § 47a-15a for nonpayment of rent; (4) termination of the rental agreement as a result of a violation of § 47a-11, which enumerates a tenant's responsibilities; (5) where the premises are occupied by one who has no right or privilege to occupy such premises; or (6) where a tenant originally had the right or privilege to occupy the premises but that right or privilege has terminated. A tenant's failure to pay use and occupancy is not enumerated in § 47a-23 as one of the grounds of a notice to quit.

Under General Statutes § 47a-23, as was the case with its predecessors, "it is essential that the lease should have terminated in one of the ways specified . . . ." *Rosa* v. *Cristina*, 135 Conn. 364, 365, 64 A.2d 680 (1949). The grounds for eviction are limited to those set forth in the statute; other grounds may not be created judicially. A summary process complaint based upon a ground not specifically enumerated in § 47a-23 fails to allege a cause of action of summary process. Id.

To conclude otherwise would fail to " '[narrowly construe] and strictly [follow]' " the statute; *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 143, 520 A.2d 173 (1987), quoting *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 600–601, 96 A.2d 217 (1953); and would render meaningless those parts of the statute that carefully distinguish between rental payments and use and occupancy payments.

Moreover, there are practical reasons why nonpayment of use and occupancy should not serve as a ground for eviction. The view that a tenant at sufferance may be evicted for failure to pay for the use and occupancy of rental property could place a tenant in a state of uncertainty as to whether that tenant has paid what the law requires. This uncertainty may arise for three reasons. First, the landlord and the tenant may disagree as to the fair rental value. This is especially true where the tenant claims that disrepair of the property has diminished the fair rental value of the premises. Thus, where the landlord has not invoked the procedure of General Statutes § 47a-26b, the amount of use and occupancy due will be unknown in advance because the period of time that must be paid for is unknown. There is by definition no lease specifying it, and a tenant at sufferance is liable for the use and occupancy of the premises only during the period of actual occupancy, which of course cannot be known in advance. Third, without a lease, there is no way to know the specific date on which payment is due.

Thus, where a summary process complaint alleges nonpayment of use and occupancy or, as was the case here, where the complaint alleges nonpayment of rent but the tenant's delinquency was the failure to pay use and occupancy, the court will not obtain jurisdiction of the case because the notice to quit was not based on one of the statutory grounds set forth in General

Statutes § 47a-23; *Rosa* v. *Cristina,* supra; and therefore no judgment of possession may enter.

My conclusion that nonpayment of use and occupancy is not a proper ground for eviction does not mean that a tenant's failure to pay use and occupancy leaves a landlord without any recourse in a case such as this. Where a prior summary process action is pending, the landlord may follow the procedures set forth in § 47a-26b and seek to hasten the judgment process. The landlord also may serve a new notice to quit possession, and thereafter bring a separate summary process action in the usual manner required to dispossess a tenant at sufferance; see *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 452–53, 473 A.2d 318 (1984); and may institute an action for the amount owed. See *Lonergan* v. *Connecticut Food Store, Inc.,* supra, 130–31; see also footnote 5, supra.

## C

Applying these principles to this case, I conclude that the trial court properly dismissed the plaintiff's complaint. The rental agreement between the parties was terminated by the May 1 notice to quit for nonpayment of rent. General Statutes § 47a-15a. The plaintiff did nothing to show that this otherwise unequivocal act should be interpreted as anything but an exercise of its option to terminate the lease. Having terminated the rental agreement on May 1 for nonpayment of rent, and not having reinstated the defendant or otherwise created a new month-to-month tenancy, the plaintiff was precluded from claiming that the defendant was in default for nonpayment of rent for June. What was due for June was use and occupancy. Failure to pay use and occupancy was not a proper basis for the plaintiff's action. I would, therefore, find no error in the trial court's dismissal of the complaint.