[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
This Court previously dismissed this case for lack of subject matter jurisdiction. The plaintiff filed a motion to open the judgment of dismissal which the Court heard and took evidence on. The Court finds that the defendant was served with a notice to quit possession on May 16, 1990, which is within the twelve month period provided for in General Statutes section 21-80(b)(3)(B), prior to the service of the notice to quit which was the genesis of this case. Although the May, 1990 notice to quit may have been defective stating a termination date of June 18, 1989, this defective notice could not have confused the defendant and the defendant tendered the entire arrearage shortly thereafter. The Court finds that the defect, a scrivener's error, was not of such a magnitude as to make the notice to quit a nullity for all purposes. See, for example, City of Bridgeport v. Barbour-Daniel Electronics, Inc., 16 Conn. App. 574, 584 (1988) (one judge dissenting). See also Bargain Mart, Inc. v. Lipkis, 212 Conn. 120, 134
(1989). Therefore, as the defendant has in fact tendered an "arrearage" called for in section 21-80(b)(3)(B) within the preceding twelve months, the plaintiff is not barred from prosecuting this action and the plaintiff's motion to open the judgment of dismissal is granted, and the Court now proceeds to decide the case on the merits.
The defendant owns his own "mobile manufactured home" and has been a tenant of the plaintiff since 1981. The legislature has recognized the difficulty and potential losses that mobile home owners face in selling their homes "off-site" CT Page 2581 rather than "on site." See Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 255 (1988). See also Eamiello v. Liberty Mobile Home Sales, Inc., 208 Conn. 620 (1988). In addition to restricting the previously unfettered discretion of a mobile home park owner to approve a purchaser of a tenant's mobile home as a new lessee, the statutory scheme also gives an option to such a tenant to extend the term of his lease indefinitely, and to transfer this right to a purchaser, so long as he pays rent and obeys park rules and regulations. General Statutes section 21-80. The statute also requires one year notice to tenants before summary process may be commenced if the park owner decides to use the land for another purpose, thirty days notice for nonpayment of rent, and sixty days notice for other reasons limited in section21-80. The statute contains rights to cure, regulatory supervision by the Department of Consumer Protection over park owner licensees, model lease terms, and numerous other provisions for the protection of the tenant which recognize the "economically dominant position" a park owner has over a tenant who owns his own mobile home. Eamiello, supra, 649. The legislature, by providing these protections, has elected to make the tenant the recipient of the economic benefit derivable from the increment in value attributable to an "on site" mobile home, rather than the landlord. Forced eviction of the tenant would therefore cause him to lose this economic benefit in the context of a mobile home park lease.
The Court also considers that the tenant has been a resident of the mobile home park for over nine years, and in addition to the economic benefits he stands to lose from being unable to sell his home "on site," would also lose his rights to indefinitely extend his lease, and suffer great hardship in moving the mobile home if he could not sell it, and in finding a new lot to place it on. It is widely known that such sites are difficult to obtain, as was recognized by the court in Eamiello, supra, pp. 647-648.
"A court may enjoin a forfeiture of a lease based on technical grounds to relieve a party against forfeitures and penalties not occasioned by his wilful neglect, upon the principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression. . . Equity will intervene where `the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally' the conditions of the lease." Mobilia, Inc. v. Santos, 4 Conn. App. 128, 131 (1985).
Here, the defendant tendered, within one or at the most two days after service of the notice to quit the rent, CT Page 2582 utility charge and a late charge. If the landlord accepted the tender, the landlord would have suffered no loss at all. In fact, there was substantial evidence that the defendant paid his monthly rent late on several occasions during prior months, which rental payments were accompanied by late charges of $25.00 and accepted by the landlord. The Court finds that the defendant's failure to pay the rent on time was not due to wilful neglect.
"It is elementary that a court of equity, even in the absence of fraud, accident or mistake may grant relief to prevent a forfeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest." Mobilia, supra, 131. This the defendant did, and under these circumstances where there is no loss discernible to the plaintiff, and the hardship to the defendant incalculable, it would be unconscionable to declare a forfeiture and grant summary process to the plaintiff. Of course, the defendant must recognize and be warned that he must pay his rent on time, knowing that the consequences of future late payments may well be different.
Accordingly, judgment may enter for the defendant, without costs. All use and occupancy payments deposited by the defendant with the clerk are ordered paid to the plaintiff. The defendant shall pay plaintiff's costs for service of process and the notice to quit within sixty days of presentation of an invoice for same to the defendant.
Teller, J.