[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction
The present case involves an action by the owner of a mobile manufactured home park against a resident who owns his mobile home and leases a lot at the park. The owner is seeking possession for the resident's failure to pay a rent increase. The action is a rematch of that between these parties earlier in 1990. See, Ierna's Mobile Home Park v. John Cunningham, SPH 9002-54465 Susco, J. (July 18, 1990) (H-924). In that case and three similar cases, Judge Susco ruled that the statutory notice initiating the proposed rent increases was untimely served.
 II.
Discussion
 A.
As noted by Judge Susco, General Statutes 21-80 (b)(5) allows an owner of a mobile home park to increase the rent at the termination of a rental agreement if "(A) the owner delivers a written notice of the proposed rent increase to the resident at least thirty days before the start of a new rental CT Page 3674 agreement, (B) the proposed rent is consistent with rent for comparable lots in the same park; and (C) the rent is not increased in order to defeat the purpose of this subsection." The rental increase notice of August 26, 1988 which was the subject of the prior decision is likewise the central issue in this matter. That notice ordered Mr. Cunningham's rent to be increased to $210.00 per month commencing October 1, 1988. The exact notice stated:
August 26, 1988
Dear Mr. Cunningham
 Effective October 1, 1988 your base rent will increase to $210.00 per month.
 If you paid the sewer connection fee to me you may credit $60.00 per month against the $210.00 until you have covered the amount you paid.
 If you have any questions, please feel free to call or talk to me.
Very truly yours,
Joseph N. Bernadino
 Your rent becomes $190 for the month of Jan. 1989 and $210 thereafter.
As mentioned, Judge Susco found the above notice was untimely served because Mr. Cunningham's rental agreement was for a one year term ending on November 30, 1988. As the notice sought to raise the rent during the term it obviously violated the statute. Judgment therefore entered for Mr. Cunningham. The plaintiff now argues that if the notice was ineffective to increase the rent in October 1988, it was effective to increase it December 1, 1988.
 B.
This action was brought pursuant to General Statutes21-80 (b)(1)(D) (authorizing summary process actions for failure of the resident to agree with a proposed rent increase, provided the owner has complied with all provisions of subdivision (5)). The owner also alleges compliance with General Statutes 21-80 (2) (requiring the service of a pre-termination notice specifying the alleged omission/violations and allowing 21 days to remedy). That second notice, dated October 2, 1990, is a letter from CT Page 3675 plaintiff's attorney indicating a failure to pay a rental increase effective December 1, 1988, a present arrearage of $1320.00 and the ability to stop an eviction by paying the sum within 21 days of October 2, 1990. The letter also warned that "the option to halt eviction proceedings for nonpayment of rent may only be used once in a twelve month period." The owner served a Notice to Quit on November 28, 1990.
The issue now before the court is whether the August 26, 1988 notice found to have been untimely served is still effective to allow an increase in rent at a later time.
This issue is remarkably similar to that in Bridgeport v. Barbour-Daniel Electronics Inc., 16 Conn. App. 574 (1988) (hereinafter "Bridgeport"). In that case, the landlord had served two notices to quit for nonpayment: one on April 30, 1986: the other on June 11, 1986. The first notice was not served until May 1, 1986 and thus, not being served in the same month it was issued, was defective and could not be the basis of a summary process action for nonpayment. Tehrani v. Century Medical Center, 7 Conn. App. 301, 305 (1986). The issue before the court however was whether the untimely served first notice had any legal effect. The defendant argued that the notice, while not sufficient to commence a summary process action, still terminated the lease agreement. The second notice, it was argued, was defective since without a lease there was only use and occupancy owed rather than rent and no action under General Statutes 47a-23 would lie. The plaintiff argued that since the first notice was defective, it was null and void for all purposes. The court concluded that the untimely served notice had no legal effect. The court noted that "invalid" according to Ballentine's Law Dictionary means: "Illegal having no force or effect or efficacy, void; null." Bridgeport, supra, 582. The court then concluded that the first Notice to Quit was invalid for all purposes . . . ." Id, 582. See also, Marrinan v. Hamer, 5 Conn. App. 101, 104
(1985).
 D.
While the above conclusion resolves the substantive issue in this case, the defendant has moved for sanctions arguing that the plaintiff has commenced this proceeding "without reasonable cause." See General Statutes 52-99; P.B. 111. This court is likewise concerned about the plaintiff now instituting the present nonpayment action based on that August 26, 1988 letter. However, while this court does not agree with the plaintiff, it notes that the argument is not totally without merit. See Bridgeport, supra, 588 (Borden J., dissenting). Accordingly, no sanctions will be imposed. CT Page 3676
 III.
Conclusion
Inasmuch as the August 26, 1988 notice was declared invalid by Judge Susco, this court holds the notice is invalid for all purposes. The Motion to Dismiss is granted.
Berger, J.