[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action based upon non-payment of rent under a residential lease. Plaintiffs appeared by counsel and defendants appeared pro-se, filing special defenses and a counterclaim concerning alleged housing code violations. After hearing the evidence and reviewing the claims of law filed by each party, the court finds for the defendants in the summary process proceeding and for the plaintiffs on the counterclaim.
In February 1991, the parties entered into a lease agreement commencing March 1, 1991 through March 31, 1994. The original lease agreement called for monthly payments of $650.00 except for the months of December through March when the payments were reduced to $600.00. This agreement was amended in April to monthly payments of $625.00 reduced to $575.00 during the winter months. Lease Agreement, Def. Exh. 1.
Thereafter, on November 1, 1991, defendants requested the plaintiffs to make certain repairs which were specified in the amended lease agreement and also complained that the heating system and electrical systems were not functioning properly. Defendants also advised plaintiffs that they would not pay the rent until November 23 and requested that at least a portion of the repairs be CT Page 4706 made by then and asked for the opportunity to discuss these issues further. Def. Exh. 2.
Rather than remedy the breach, the landlords instead issued a notice to quit for non-payment of rent on November 16, 1991. That notice to quit was followed by a summary process action commenced in December, 1991. However, the notice to quit was defective because rent under the parties' agreement was due on the 10th of each month, such that the grace period ran through the 19th of each month. Conn. Gen. Stat. 47a-15a. Accordingly, issuance of a notice to quit prior to the 19th could not support an action for summary process. Conn. Gen. Stat. 47a-23 (a)(1)(D).
While the first summary process action was pending, defendants pursued their complaints over the condition of the premises with the appropriate authorities. On December 16, 1991, the Naugatuck Valley Health District Housing Code Enforcement Officer advised plaintiffs that her inspection revealed that the furnace was not working properly and confirmed defendants' complaint that storm windows and storm doors had not been provided and requested plaintiffs to take immediate action to correct these conditions with follow-up reporting and inspection. See Def. Exh. 3. The furnace was cleaned -and serviced promptly on December 19, 1991. See Pltf. Exh. C. No record of any follow-up inspection was provided to the court by either party. In January, the defendants complained to the Naugatuck Valley Health District that the toilets were not flushing properly and plaintiffs were notified that the site inspection confirmed this problem by letter dated January 8, 1992 with a reinspection date of January 21, 1992. See Def. Exh. 4. A repair was again performed prior to the reinspection date. See Pltf. Exh. D. Again, neither party provided the court with the results of the follow-up inspection, if any.
On January 27, 1992, plaintiffs withdrew the first summary process action, giving notice to defendants of the withdrawal by abode service made that date. Defendant Kazimierz Binkowski testified that he made immediate and repeated attempts to contact plaintiff and plaintiff's attorney about rent payment, but his offer to pay rent was refused. A notice to quit for non-payment of January rent was issued and served on January 31st. Again defendant attempted to make arrangements to pay rent, which was refused. This testimony was disputed by plaintiffs.
Defendant Kazimierz Binkowski admits that he intended to delay the November rent as a means to negotiate the repairs to the premises with the landlords and claims that he was not obligated to pay rent after the issuance of the first notice to quit and was further actively prevented from paying the rent because plaintiff Pasquale Cerretto refused to come to the premises to receive the rent as was the custom, practice and agreement of the parties. See CT Page 4707 also Conn. Gen. Stat. 47a-3a(b)(1).
Plaintiffs claim that this case is governed by Housing Authority v. Hird, 13 Conn. App. 150 (1988), in which a three-judge panel of the Appellate Court held that a withdrawal of a summary process action on January 29, 1986 was effective to reinstate the tenancy such that rent was then due and unpaid and could properly support a summary process action based upon a notice to quit for non-payment of January rent issued on January 31, 1986. Although this court agrees that the issue here is similar to the issue in Housing Authority v. Hird, this court questions its application to these facts in light of the conflicting opinions of the judges in Bridgeport v. Barbour-Daniel Electronics, Inc., 16 Conn. App. 574
(1988).
In Bridgeport v. Barbour-Daniel Electronics, Inc., the Appellate Court upheld the summary process eviction for non-payment of rent of a commercial tenant in an airport facility. In that case, defendant was a holdover tenant who stopped paying rent. An improper notice to quit was issued for non-payment of rent for May 1986, which was followed by a proper notice to quit for non-payment of the June rent. No action was commenced on the first improper notice to quit. A summary process action was commenced based on the second, valid, notice to quit.
One of the disputed issues in the Bridgeport case was whether or not the remedy of summary process could be used for non-payment of use and occupancy. As a result, the case was argued en banc on this issue. Id., 16 Conn. App. 574, 575, footnote 1. In the majority opinion, the Appellate Court found it was not necessary to reach this issue because the first notice to quit in May was ineffective to terminate the tenancy, a new month to month tenancy was created for the month of June, and therefore rent was due and not paid and could support a notice to quit and summary process action in June. However, in footnote 7 of that opinion,16 Conn. App. at 581, the majority of the Appellate Court stated that it agreed with the dissenting opinion that non-payment of use and occupancy was not a proper ground for a summary process action and indicated that language to the contrary in Housing Authority v. Hird was not "a precise statement of our law." Similarly, although certification for appeal was denied in Housing Authority v. Hird209 Conn. 825 (1988), in Bargain Mart, Inc. v. Lipkis, 212 Conn. 120,133-137 (1989) the Connecticut Supreme Court found it unnecessary to review the implications of the "revival" of lease agreement analysis in Hird.
This court agrees with the reasoning of Judge Borden's dissent in Bridgeport v. Barbour-Daniel Electronics, Inc., 16 Conn. App. 574,587 et seq. insofar as it sets out a logical and rational manner for dealing with situations such as this. Judge Borden CT Page 4708 concludes that the issuance of an improper notice to quit, while ineffective to sustain a summary process action, is effective to convert a tenancy at will to a tenancy at sufferance such that use and occupancy, not rent, is due thereafter. Rivera v. Santiago,4 Conn. App. 608, 610 (1985). Although he agrees that the withdrawal of a summary process action revives the tenancy at will, whereby rent is due thereafter under the terms of the reinstated rental agreement, he would limit the basis for a new summary process action to non-payment of rent due after withdrawal of the first action, not the use and occupancy payments which were due during the pendency of the first action. See also Wyngate, Inc. v. Bozak, Inc., 40 Conn. Sup. 53 (1984). The majority panel in Bridgeport agreed that summary process does not lie for non-payment of use and occupancy, only for non-payment of rent. Bridgeport,16 Conn. App. at 581, footnote 7.
Here, this court finds that the issuance of the improper notice to quit on November 16, 1991, although invalid to terminate the lease, did convert the tenancy at will to a tenancy at sufferance during the pendency of the first summary process action. Accordingly, while the first summary process action was pending, including during the month of January, 1992, no "rent" was due, only use and occupancy. Although the lease was briefly reinstated by withdrawal of the first summary process action on January 27, the tenancy was again converted to a tenancy at sufferance on January 31, 1992 by issuance of the second notice to quit.
The court further finds that the obligation to pay rent could not be retroactively revived for the sole purpose of claiming its default. Thus, the notice to quit issued January 31, 1992 for nonpayment of January "rent" was invalid since "use and occupancy" not "rent", was due in January. A summary process action does not lie for non-payment of use and occupancy. Id., footnote 7.
In addition, this court finds that defendants have sustained their burden of proving that plaintiffs clearly and unequivocally refused to accept rent or reinstate the tenancy after the withdrawal of the first action but prior to the forfeiture declared by the issuance of the second notice to quit. This constitutes an anticipatory breach of the rental agreement plaintiffs had unilaterally revived and excuses defendants from the obligation to make further tender of rent. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149 (1961).
Accordingly, judgment will enter for the defendants in the summary process action. However, defendants are strongly cautioned that this decision reinstates the lease agreement, that rent is due on the due date, that the grace period expires on the 19th of each month, that if payment is not collected prior to that time tender must be made by depositing payment by check or money order in the CT Page 4709 United States mails, postage pre-paid, prior to the expiration of the grace period, that rent cannot be withheld and that only the court, in properly filed proceedings, can excuse payment to the landlord, under which circumstances rent must be paid into court, and that they are still liable for use and occupancy for any month in which rent was not paid. The court finds the amount of the accrued use and occupancy to be $2925 and encourages the parties to negotiate a repayment schedule so as to avoid further litigation.
With respect to the counterclaim, the court finds that the defendants have not followed the proper procedure for bringing such a claim, see Conn. Gen. Stat. 47a-12 and 47a-14h. Further defendants have not established material non-compliance with the landlord's responsibilities under Conn. Gen. Stat. 47a-7. The evidence presented shows that the landlord made good faith efforts to remedy any noncompliance. If the tenants are not satisfied with the landlord's performance, they may be entitled to terminate the lease and vacate. If new problems arise that come within the terms of the statute, tenants may bring an appropriate action subject to compliance with the statutory prerequisites. But, tenants cannot remain in the premises without paying the agreed upon rent without running the risk of eviction. Complaints do not excuse the payment of rent; only a court can find that rent is not due and owing. Judgment should enter for the plaintiffs on the counterclaim.
The use and occupancy payments presently held by the court cannot be released until further hearing as required by Conn. Gen. Stat. 47a-26f. The clerk will advise the parties of the hearing date.
SEQUINO, J.
[EDITORS' NOTE: THE ORDER IS ELECTRONICALLY NON-TRANSFERRABLE.]