## HOUSING AUTHORITY OF THE TOWN OF EAST HARTFORD *v.* ELIZABETH HIRD
### (5334)

SPALLONE, BIELUCH and STOUGHTON, Js.

Argued October 14, 1987—decision released January 5, 1988

*Bruce J. Batts,* with whom, on the brief, was *Geoffrey Plank,* for the appellant (defendant).

*Ralph J. Alexander,* with whom, on the brief, was *Michael E. Wolf,* for the appellee (plaintiff).

BIELUCH, J. This is an appeal by a tenant from a judgment of possession for her landlord in a summary process action based on nonpayment of rent. The tenant, the defendant Elizabeth Hird, claims that the trial court erred by concluding that a rental agreement existed between the parties in January, 1986. In addition, the defendant maintains that even if a rental agreement did exist, the court erroneously concluded that she was not excused from a duty to tender rent for January, 1986. We find no error.

The facts are undisputed. The parties executed a written lease on January 9, 1981, for the rental of an apartment in Veterans Terrace, East Hartford. The lease was for only a one month term beginning February 1, 1981, but provided for automatic renewals for successive one month terms until termination by either party.[1] Paragraph 9 of the lease provided for automatic termination and immediate possession by management if any rent was in arrears and unpaid for a period of ten days after becoming due, or if the tenant defaulted or failed to comply with its covenants, or if the tenant vacated the premises.[2]

On June 7, 1985, the defendant was sent a written notice of proposed eviction by the plaintiff pursuant

---

[1] The lease provided in relevant part: "This lease shall be automatically renewed for successive terms of one month each, at the rental of One Hundred Fifty-One Dollars ($151.00) per month, or at such monthly rental as the Management shall determine in accordance with its rules and regulations, payable in advance on the first day of each calendar month, until terminated as herein provided. The rental herein stipulated shall continue for each successive term until Tenant is notified in writing by Management of an adjustment in the amount of the monthly rental, in which case, Tenant shall pay said adjusted rental on the first day of the month following the date of said notice. The Management may terminate this tenancy at any time by giving Tenant not less than Thirty (30) days prior notice in writing and said tenancy shall terminate on the day provided for in said notice, but this provision shall not apply to Paragraph 4(a) or Paragraph 9. Tenant may terminate this tenancy at any time by giving Management not less than Fifteen (15) days prior notice in writing and said tenancy shall terminate on the day provided for in said notice; and in such case, any unearned rent paid by Tenant and held by Management on the date of quitting possession shall be refunded to Tenant."

[2] Paragraph 9 of the lease provided: "If any rent shall be in arrears and unpaid for a period of Ten (10) days after the same shall be and become due and payable as aforesaid, or if Tenant shall default in or fail to comply with any of the covenants herein contained on his part to be kept and fulfilled, excepting where otherwise provided, or if the Tenant executing this lease shall vacate the premises, then and in any such event, this lease shall terminate automatically, and Tenant agrees that Management shall be entitled to immediate possession of said premises without any previous demand or notice whatsoever."

to General Statutes § 47a-15.[3] The notice alleged that the defendant had violated the lease by maintaining the premises in an unsanitary condition and by keeping pets on the premises. On July 15, 1985, the defendant was served with a statutory notice to quit possession. This supplemented the prior written notice to correct breach of lease and alleged the same lease violations for eviction. It also recited the following: "Notice: All payments made by you, on or after the date of this notice, shall be accepted as Use and Occupancy Only without prejudice to the Housing Authority of East Hartford's right to evict you." A subsequent summary process action ended with judgment for the defendant on November 6, 1985.

A second notice to quit possession was served on the defendant on November 15, 1985. This notice alleged as the reason for eviction "nonpayment of rent for the month of November." This second eviction notice contained the same advisory language as the July 15, 1985 notice that all future payments would be accepted only as use and occupancy payments. The summary process action based on this second notice to quit possession was withdrawn on January 29, 1986, in response to the defendant's filing of a motion to dismiss the action for failure to comply with applicable federal regulations.[4]

---

[3] General Statutes (Rev. to 1985) § 47a-15 provides in relevant part: "Except in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on nonpayment of rent or based on conduct by the tenant which is illegal, if there is a material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises, or if there is a material noncompliance by the tenant with the rental agreement or a material noncompliance with the rules and regulations adopted in accordance with section 47a-9, the landlord may deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than thirty days after receipt of the notice."

[4] Because of federal housing assistance payments under contract with the owner, the apartment development where the defendant resides is governed for purposes of summary process by 24 C.F.R. § 881.607.

While this action was pending, however, the defendant's counsel sought to make arrangements for the reinstatement of the defendant as a tenant. The plaintiff refused such consideration and advised the counsel that the defendant owed the plaintiff a total of $1497.60, including $1224 for rent as of January 6, 1986. The defendant had in fact stopped paying rent in July of 1985, making only one payment of $250 on November 20, 1985, which the trial court characterized as a "payment on account."

On January 31, 1986, the defendant was served with a third notice to quit possession. This notice claimed as the plaintiff's reason for eviction "nonpayment, month of: January, 1986." The plaintiff's amended two count complaint alleged in the first count that the parties had entered into an automatically renewable month-to-month written lease on January 9, 1981, under which the defendant was still in possession of the leased premises. The second count of the complaint alternatively alleged that the parties' relationship as lessor and lessee existed under a parol month-to-month lease. The defendant by special defense denied that any lease was in effect in January, 1986, and claimed, therefore, that she could not "be evicted for nonpayment of rent for that month."

The trial court rendered judgment of possession for the plaintiff, ruling that the defendant "was then occupying her apartment under her lease as a tenant at will" in January, 1986. Consequently, she had a duty to tender rent for that month's tenancy, which she breached. This appeal followed.

The defendant's first claim on appeal is that the trial court erred in concluding that a rental agreement existed between the parties on January 1, 1986. Specifically, the defendant argues that the court erred in holding that the written rental agreement entered into

on January 9, 1981, had not been terminated, since the summary process action initiated in July of 1985 terminated with judgment for the defendant on November 6, 1985, and the second summary process action was withdrawn on January 29, 1986.

The trial court found that the defendant was occupying her apartment under her lease as a tenant at will on January 1, 1986, because the judgment rendered on November 6, 1985, in the defendant's favor did not terminate the lease, and, therefore, had "revived" the original lease arrangement, and because the eviction action following the November 15, 1985 notice to quit possession having been withdrawn, had no legal effect or consequence on the preexisting lease between the parties. We agree with the trial court's holding.

Summary process is a statutory remedy which enables a landlord to recover possession of rental premises from the tenant upon termination of a lease. General Statutes § 47a-23. It is preceded by giving the statutorily required notice to quit possession to the tenant. *Webb* v. *Ambler,* 125 Conn. 543, 552–53, 7 A.2d 228 (1939). Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961); *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720 (1954); *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 686, 460 A.2d 1311 (1983). It is necessary to prove the allegations of the notice to quit possession in order to obtain a judgment for possession.

Service of the July 15, 1985 notice to quit possession upon the defendant was an explicit act by the plaintiff in recognition of the existence of the defendant's lease. When the November 6, 1985 judgment was rendered in favor of the defendant in the subsequent summary process action, the trial court had determined thereby that the defendant had not committed the lease violations alleged by the plaintiff in the underlying notice and complaint. The court's decision then that the plaintiff was not entitled to possession was necessarily predicated upon a finding that the lease had not been terminated and that the defendant continued to have a valid lease on November 6, 1985. The service of the notice to quit possession on July 15, 1985, did not compromise the tenant rights of the defendant because the subsequent trial and judgment on the merits in the summary process action predicated on this notice did not uphold the allegations of the complaint asserting the termination of the lease by this notice to quit possession. The trial court, therefore, correctly concluded that the defendant's lease survived the judgment of November 6, 1985, in her favor. The parties were returned to their status quo before July 15, 1985, by this judgment.

Of similar import is the subsequent summary process action predicated upon the notice to quit possession served on November 15, 1985. After the defendant filed a motion to dismiss that action based on noncompliance with applicable federal regulations, the plaintiff on January 29, 1986, withdrew this summary process action pursuant to its statutory right. General Statutes § 52-80.[5] *Marrinan* v. *Hamer,* 5 Conn. App. 101, 103, 497 A.2d 67 (1985). We conclude that the defendant's lease also survived this summary process action because

[5] General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof."

of its withdrawal by the plaintiff before a hearing and judgment thereon. The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by § 52-80, is absolute and unconditional. Under our law, the effect of a withdrawal, so far as the pendency of the action is concerned, is "strictly analogous to that presented after the rendition of a final judgment or the erasure of a case from the docket." *Lusas* v. *St. Patrick's Roman Catholic Church Corporation,* 123 Conn. 166, 170, 193 A. 204 (1937); *Salonia* v. *Salonia,* 16 Conn. Sup. 86, 88 (1949). The withdrawal of the summary process action on January 29, 1986, effectively erased the court slate clean as though the eviction predicated on the November 15, 1985 notice to quit possession had never been commenced. The plaintiff and the defendant were "back to square one," and the continuation of their lease of January 9, 1981, was restored.

The defendant also maintains that even if the rental agreement did exist in January, 1986, the court erroneously concluded that she was not excused from her obligation to tender rent for that month. The defendant argues that the lease automatically terminated prior to January, 1986, under its own provisions for such termination if rent was unpaid for a period of more than ten days. The defendant also claims that the plaintiff's anticipatory breach when it refused to reinstate her as a tenant on January 7, 1986, excused her from the obligation to tender and pay rent for that month. We disagree.

The statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them. Termination of the lease does not terminate the tenancy since, upon service of a notice to quit possession, a tenancy at sufferance is created. *Rivera* v. *Santiago,* 4 Conn. App. 608, 610, 495 A.2d 1122 (1985); *Bushnell Plaza Development Corporation*

v. *Fazzano,* supra. Even though a tenant at sufferance is excused from a duty to pay the stipulated rent under the lease, the obligation to pay a fair rental value for the use and occupancy of the dwelling unit remains. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 131, 357 A.2d 910 (1975); *Rivera* v. *Santiago,* supra. Therefore, even if the defendant believed that the lease had ended and that she was relieved from a duty to pay a stipulated rent, her obligation to pay for her use and occupancy of the premises continued. Her failure to pay rent *or* a fair rental value for use and occupancy for the month of January, 1986; General Statutes § 47a-3c; authorized the plaintiff to issue a notice to quit possession under the provisions of General Statutes § 47a-23 (a)[6] preliminary to an action for summary process.

When the defendant requested reinstatement as a tenant during the pendency of the second eviction action, the plaintiff replied through its attorney on January 7, 1986, that "the Housing Authority does not wish to have Ms. Hird as a tenant any longer and has instructed me to obtain a judgment of possession as soon as legally possible." The defendant's claim that this was an anticipatory breach excusing her from payment of rent for that month ignores the further statement in the referenced letter that "Ms. Hird owes

---

[6] General Statutes § 47a-23 provides in relevant part: "NOTICE TO QUIT POSSESSION OF PREMISES. FORM. SERVICE. (a) When a rental agreement or lease of any land or building or of any apartment in any building, or of any dwelling unit . . . whether in writing or by parol, terminates by lapse of time, or by reason of any expressed stipulation therein . . . or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated, and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease, if any, or at any subsequent time, he or they shall give notice to the lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

$1,224 for rent as of January 6, 1986; [together with fees of $273.60] for a total of $1,497.60." The court, citing *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* supra, 156, found that this letter "was not such an unequivocal declaration that tender would be refused so as to excuse any attempt at production." We will not disturb that finding of the trial court. It is not clearly erroneous in view of the evidence and pleadings. See Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

There is no error.

In this opinion the other judges concurred.