[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
I.
Introduction
The plaintiff landlord has filed the instant action seeking possession of the premises at 35 Frederick Street, Apartment 105, Hartford, Connecticut now occupied by the defendant tenant under a lease dated December 6, 1990. The parties have acknowledged that the property is subject to federal regulations at 24 C.F.R. § 881.607 as the property is federally subsidized (Section 8 Substantial Rehabilitation). On or about March 15, 1991, the landlord, by a sheriff, served a notice to quit on the tenant terminating the lease on March 25, 1991 for nonpayment of rent for said month. The tenant has now moved to dismiss this action alleging that the notice to quit falls, to comply with federal and state requirements.
 II.
Discussion
Both parties agree that where a lease is subject to federal regulations due to federal mortgage or rent subsidy, the landlord must comply with federal regulations as well as state law. Jefferson Garden Associates v. Greene, 202 Conn. 128
(1987). The relevant federal regulations (hereinafter, "the regulations") are found at 24 C.F.R. § 881.607 which state, inter alia, that:
 (c) Termination notice. (1) The owner must give the family a written notice CT Page 6751 of any proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specified date and advising the family that it has an opportunity to respond to the owner. . . . [W]here the termination notice is based on material non-compliance with the lease or material failure to carry out obligations under a State landlord and tenant act pursuant to paragraph (b)(1)(i) of (b)(1)(ii) of this section, the time of service must be in accord with the lease and State law.
The tenant has first argued that this action must fail because the regulations require the landlord to serve two notices: the first, a notice which advises the tenant of the proposed termination as well as his/her ability to defend, etc. and the second, a notice to quit complying with state law. In this case, the landlord only served one notice which, according to the tenant, attempted to combine the two allegedly mutually exclusive functions. This court is not persuaded by defendant's argument as the federal regulations do not mandate the service of two notices. If the regulations actually required two notices, that would have been set forth in subsection 881.607.
This court is mindful of the decision in Staten v. Housing Auth. of City of Pittsburgh, 469 F. Sup. 1013 (W.D.Pa 1979) in which the court found the use of a combined notice to evict a public housing tenant invalid. The court reasoned that since the tenant was entitled to present his grievances at a hearing, Goldberg v. Kelly, 397 U.S. 254 (1969), two notices were required — one for the proposed termination advising of the right to a hearing and then after the administrative decision became final, a second notice to quit under state law. Staten is not applicable to the present case however, as the regulations herein differ from those controlling in that case. This court also notes that other courts have rejected the Staten argument. Ferguson v. Housing Authority of Middlesboro,499 F. Sup. 344 (E.D.Ky 1980); Housing Authority v. Terry,789 P.2d 745, 750 (Wash. 1990).
This court also finds no support in the lease for tenant's two notice theory. Section 23 controls termination of tenancies and subsection c states, in part:
 c. If the landlord proposes to terminate this agreement, the landlord agrees to give the tenant written notice of the proposed termination. . . Notices of proposed termination for other CT Page 6752 reasons must be given in accordance with any time frames set forth in State and local law. Any HUD-required notice may run concurrently with any notice period required by State or local law. All termination notices must;
* specify the date this agreement will be terminated;
 * state the grounds for termination with enough detail for the tenant to prepare a defense;
 * advise the tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the landlord. The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed. If the tenant requests the meeting, the landlord agrees to discuss the proposed termination with the tenant; and
 * advise the tenant of his/her right to defend the action in court.
Again, there is no stated requirement for double notices.
This two notice issue was previously reviewed in Clay Hill Associates v. Figueroa, SPH 8404-23217, Aronson, J., September 19, 1984 (H-570). That case, like the present, involved a nonpayment of rent claim for a Section 8 substantial rehabilitation unit and was governed by exactly the same federal regulations. Judge Aronson approved the single notice to quit finding that whereas federal termination notices have, in part, been structured to provide the tenant with the opportunity to contest the termination, 42 U.S.C. § 1437d(k); Thorpe v. Housing authority, 393 U.S. 268 (1968), that was not the case for termination due to nonpayment of rent. Accordingly, he found that "the notice requirements for termination of a lease pursuant to 24 C.F.R. § 881.607 (c)(2) and General Statutes 47a-23 are so similar that one notice will suffice to comply with both federal and state law." Clay Hill v. Figueroa, supra, 3. See also, Secy of HUD dba Meadowbrook Apts v. Armatino, SPH 8201-741WH, Foti, J., February, 17, 1982 (NH-31); St. Paul's Housing Corp. v. Hill, SPH 8411-6334 SO, Goldstein, J., March 12, 1985 (H-616). Based on these decisions, landlords have served this combined notice for nonpayment of rent cases.
C. CT Page 6753
The genesis of the tenant's argument for two notices apparently derives from the use of the phrase "proposed termination" in the regulations. This court believes, however, that the use of the word "proposed" is only to modify that phrase in subsection one, discussed above, which states that "the tenancy is terminated on a specified date" (emphasis supplied). In other words, federal law requires that the tenancy can only be terminated on a future date rather than being terminated immediately. By terminating on a future date, the tenant is afforded the right to halt the eviction proceedings before that date. In this regard, it is consistent with the Uniform Residential Landlord and Tenant Act, a model statutory framework adopted in a number of states. Section 4.201 therein provides for a notice (i.e. notice to quit) to the tenant specifying the acts or omissions constituting the breach and states that the rental agreement terminates on a date in the future if not remedied before such time. Connecticut did not adopt this model act, and with the exception of notices issued pursuant to General Statutes 47a-15 ("Kapa" notices), it generally follows a different notice procedure. There is usually no future termination date, as the lease agreement is generally terminated upon the service of the notice, Mayron's Bake Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 156 (1961); Borst v. Ruff,137 Conn. 359, 361 (1950); Housing Authority v. Hird, 13 Conn. App. 150,155, (1987) and the tenancy is immediately converted to a tenancy at sufferance. Id. That, of course, depends on the language in the notice to quit which often begins with the phrase "I hereby terminate your lease." With such a notice, the parties cannot simply agree to halt the eviction proceedings before the lease terminates: they would be required to reinstate the tenancy.[1] But, Connecticut General Statutes 47a-23a does not mandate that the notice immediately terminate the lease upon service. The statute allows the lease to be terminated at a future date. It states:
 such owner . . . shall give notice to each lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy. (emphasis supplied).
The decision whether to terminate immediately or in the future is left up to the landlord — as long as he complies with the eight day notice rule. Obviously, with cases involving federal regulations such as the present one, the termination can only be in the future. CT Page 6754
As there is nothing in General Statutes 47a-23(a) or (b) that requires immediate termination of the agreement, there is no conflict with the federal requirements. See also, Congress St. Assoc. v. Rolleston, SPH 8512-31324, April 4, 1986, Goldstein, J. (H-742) and Ouellette v. Woodbury, SPN 8308-4995, September 21, 1983, Aronson, J. (H-464) for a similar conclusion.
The tenant's second argument is more compelling. Referring to the requirements of both subsection 881.607 and the lease to provide the tenant with the opportunity to discuss the proposed termination, the tenant argues that a single notice conflicts with the unequivocal notice requirement of state law.
Our summary process procedure is, of course, based upon the issuance of a notice to quit. Sandrew v. Pequot Drug, Inc.,4 Conn. App. 627, 631 (1985). "The notice to quit under the statute is the basis for the inauguration of an action at law." O'Keefe v. Atlantic Refining Co., 132 Conn. 613, 622 (1946), citing Webb v. Ambler, 125 Conn. 543, 552 (1939). The notice to quit serves as an unequivocal manifestation by the lessor that he terminates the rental agreement. Messinger v. Laudano, 4 Conn. App. 162,163 (1985). It must convey a clear intention to the tenant that his lease has been terminated. Zitomer v. Palmer,38 Conn. Sup. 341, 343 (1982); Cooper v. Lewis SPH 8309-20430, Aronson, J., October 11, 1983 (H-471).
The tenant posits that the mandatory opportunity to respond language, discussed above, undercuts the requirement of state law that the notice be unequivocal in terminating the tenancy. Tenant thus argues that the statement "You have 10 calendar days with which to respond in writing or in person to the agent for the owner, Intown Management Corporation, 16 Owen Street, Hartford, CT 06105, (203) 236-6061" — a statement which satisfies the requirements of subsection 884-607(c) and section 23c of the lease — makes the notice equivocal. It must be noted that Judge Aronson did not address this issue in Clay Hill.
In Fairway Gardens, Inc. v. May, SPNH 7009 26 218, Oct. 25, 1990 (WH-538), Judge Vertefeuille specifically addressed this issue. The landlord therein included language similar to that in the present matter. The advisement stated that "You have 10 days beginning on the day after the date of this notice with which to discuss the proposed termination of your tenancy with the management agent of the landlord." That language complied with the HUD occupancy handbook, 4350.3. Judge Vertefeuille ruled that such language did indeed render the notice equivocal as it vitiated the unequivocal language found earlier in the notice. "A notice to quit which purports to terminate the tenancy, but also refers to the termination as CT Page 6755 merely "proposed" and invites the tenant to discuss the situation is necessarily equivocal. Such a notice to quit does not effect a termination of the lease because it holds open the possibility that the lease may not be terminated." Id., 4. The tenant herein argues that Fairway Gardens controls the present situation. The plaintiff counters that the notice in the present case differs from that in Fairway Gardens as it does not mention a proposed termination. As both notices terminate the lease in the future, this court sees no meaningful distinction between the two advisements.
More importantly, this court does not believe that serving two notices, as suggested by the tenant, would resolve the "unequivocal" requirement issue. (Again, the first would advise of a future termination with the opportunity to discuss within ten days. The second notice would unequivocally terminate the lease and comply with state requirements.) The tenant conveniently ignores the fact that the lease, in compliance with federal law, requires all termination notices to, inter alia, specify the date the agreement will be terminated and advise the tenant of the 10 day response period. This court believes that this advisement must be included in the state notice to quit (i.e., the "second" notice).
 E.
In Jefferson Garden Associates v. Greene, supra, the court wrestled with three Kapa type notices and their compliance with applicable federal and state law. While the facts therein are not on all fours with the present case, the opportunity to respond provisions which had to be included in the termination notices were essentially the same. Thus, the court's decision is instructive on this issue.
The court stated that before the "landlord may pursue its statutory remedy of summary process, the landlord must prove compliance with all the applicable preconditions set by state and federal law for the termination of a lease." Id., 143. The court went on to add that "a landlord must show that the notices given to the tenant apprised her of the information a tenant needs to protect her against premature, discriminatory or arbitrary eviction." (citations omitted). Id., 143.
While notice requirements must be strictly construed, the court remarked that "strict construction does not, however, require ritualistic compliance with statutory or regulatory mandates." Id., 144. Thus, the court concluded that:
 Judicial appraisal of a landlord's compliance with both state and federal CT Page 6756 requirements for notices of termination must reflect the purpose that the notices were meant to serve. As we have held in other contexts, in which regulatory and constitutional rights were also implicated; not every deviation from the strict requirements of either statutes or regulations warrants dismissal of an action for summary process. When good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent. (citations omitted). Id., 145.
This court believes, therefore, that a termination notice which includes the mandatory response provisions can comply with General Statutes 47a-23 (b), Connecticut common law and the federal regulations. This court thus disagrees with the decision in Fairway Gardens, supra. There is nothing necessarily confusing or equivocal about a notice with a future termination date that gives the tenant the opportunity to redeem. If anything, it would or should cause the tenant to contact the landlord and attempt to cure the nonpayment breach. This, of course, fits nicely into our long accepted custom of preventing forfeitures for nonpayment of rent. See generally, Fellows v. Martin, 217 Conn. 57, 65 (1991). Curing the breach would surely fulfill the legislative goal in requiring such notice. If the parties are unable to resolve their differences, the matter could or would go forward.
 F.
There is, of course, an additional reason to allow a combined notice which complies with all requirements: a conflicting state procedure must fall to the federal program under the supremacy clause. "This Constitution and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land . . . anything in the Constitution or Law of any State to the Contrary notwithstanding" United States Constitution, Art. VI, Cl. 2
Maryland v. Louisiana, 451 U.S. 725, 746 (1980). "A state statute is void to the extent it conflicts with a federal statute — if, for example, "compliance with both federal and state regulations is a physical impossibility." Florida Lime 
Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963). CT Page 6757 See also, Felder v. Casey, 487 U.S. 131, 138 (1988).
Subsection 24 C.F.R. § 881.607 requires termination notices to be given to the tenant for a proposed termination and requires opportunity to respond language be part of all termination notices. Thus, a two step procedure which complies with all federal requirements in the first notice, and only state mandates in the second, would still violate the federal scheme.
A review of the notice to quit in the present case indicates that it specifies a future date the agreement is to be terminated (i.e. the date to quit possession), states the grounds for termination, advises the tenant that he has 10 days to discuss the termination and that he may defend in court. The notice does not however afford the tenant ten full days with which to respond prior to the termination.
The notice was dated and served on March 15, 1991. Commencing with March 16, 1991, it is clear that with the notice expiring on March 25, 1991, the tenant has not received a full ten days to respond before the tenancy is terminated. Treat v. Town Planning and Zoning Commission, 145 Conn. 136,139 (1958); Pichler v. Childs, HSP-HD-7901-0289HD, February 20, 1979, Spada, J., (H-3). Accordingly, the landlord has failed to serve a proper notice to quit. Jefferson Garden Associates v. Greene, supra.
 III.
Conclusion
This court reaches a different conclusion from that in Fairway Gardens, supra. Due to the requirements of federal law, this court cannot reach any other conclusion. In cases involving Section 8 subsidies such as the present matter, a combined notice to quit can be served that complies with all requirements. The instant notice, as indicated, does not. The motion to dismiss is granted.
Berger, J.