[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is yet another housing case, seeking damages for breach of a lease, dealing with successive notices to quit.
The plaintiff's complaint alleges that on March 30, 1995 the plaintiff and the defendant entered into a written agreement whereby the defendant leased an apartment from the plaintiff for the term of April 1, 1995 to June 30, 1995 at the monthly rental of $585.00 In May 1995, the plaintiff served the defendant with a notice to quit for nonpayment of rent. The complaint alleges that the defendant owes the plaintiff $2,231.42, which he has not paid, and "which is comprised of unpaid rent, use and occupancy, late charges, interest, costs, fees and attorneys' fees."
At trial, however, the plaintiff based his case that the defendant had breached the lease not on a May 1995 notice to quit but on an August 1995 notice to quit. Indeed, it was the defendant who adduced evidence of the May notice to quit. The plaintiff's property manager then countered in a conclusory and almost oft-handed manner that after service of the the May notice to suit for nonpayment of rent, the defendant paid the rent and the lease was CT Page 696-L reinstated. Notably, that notice, which was served on May 16, 1995, stated: "NOTICE IS HEREBY GIVEN THAT EFFECTIVE THIS DATE ANY MONIES RECEIVED BY THE LANDLORD WILL BE ACCEPTED AS USE AND OCCUPANCY ONLY AND NOT AS RENT, WITH FULL RESERVATION OF RIGHTS TO CONTINUE AN EVICTION PROCEEDING."
The defendant testified that he vacated the premises in August 1995. In addition, the parties stipulated that the defendant had paid a security deposit of $877.50 and that interest had accumulated on that deposit in the amount of $16.40.
The court finds that the plaintiff failed to bear its burden of proof that the lease was "reinstated". What was said in Pelenskyv. Alejhos, Superior Court, Judicial District of Fairfield, Housing Session, No. SPBR 31878 (1996), is applicable here:
 The acceptance of rent after the service of the notice to quit voids the termination effect of the notice to quit. Zitomer v. Palmer, 38 Conn. Sup. 341, 343-344
(1982). To solve that problem landlords commonly insert reservation of use and occupancy language indicating that the acceptance of a payment after the service of the notice to quit will be accepted only as use and occupancy with the landlord reserving the right to continue on with the summary process action. O P Realty v. Santana,
CT Page 696-M 17 Conn. App. 314, 318-319 (1989); Zitomer v. Palmer, supra 343. Both notices to quit in this case contained such reservation of use and occupancy language.
 Had the first notice to quit contained no such language, the tender and acceptance of the $455.00 after the service of the notice to quit would have voided the first notice to quit. The later acceptance of the rent would have terminated the notice to quit on both statutory and common law grounds. The case could have proceeded on the second notice to quit.
 There was no unequivocal reinstatement of the tenancy after the service of the [first] notice to quit . . . . The second notice to quit is therefore defective.
 "In view of the result in this case, it is safe to say that the lesson taught here is that a landlord who is indecisive in taking advantage of his right to forfeit a short term lease for condition broken, may suffer even greater and costlier delays by instituting a subsequent action predicated on a second notice to quit based on the same forfeiture. To avoid this pitfall, a landlord would be well advised to carefully consider the possible adverse consequences CT Page 696-N before issuing successive notices to quit based upon the same forfeiture." Cohen v. Thorpe, [Superior Court, Judicial District of Stamford/Norwalk, No. SPN090 11-10511 (6 CSCR 231, 3 Conn. L. Rptr. 691) (1991)].
To this may be added that the conclusory testimony of the plaintiff's property manager that the lease was reinstated, without more, is unpersuasive. There is lacking the evidence that there was such a meeting of minds between the plaintiff and the defendant after the May notice to quit.
After service of the May 1995 notice to quit, the defendant became either a tenant at sufferance, thereby having "the obligation to pay a fair rental value for the use and occupancy of the dwelling unit"; Housing Authority v. Hird, 13 Conn. App. 150,158 (1988); or impliedly a month-to-month tenant, having the duty to pay rent. The most reasonable inference from the limited evidence and the parties' conduct is that it was the latter. There is no claim that the defendant did not pay $585.00 for May, June and July. He did not pay for August, the month in which he vacated. The unit was damaged in the amount of $175.00. To this may be added $585.00 which was the fair rental value for the use and occupancy of the dwelling unit in August. Other expenses incurred by the plaintiff total $141.80. CT Page 696-O
Judgment, therefore, may enter in favor of the plaintiff for the sum of $901.80.
BY THE COURT
Bruce L. Levin Judge of the Superior Court