[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON MOTION TO DISMISS
CT Page 176
This is a summary process action raising the issue of the dual notice to quit, which seems to haunt the literature of summary process: when does a prior notice to quit terminate the rental agreement so that a second notice cannot logically state the reason for eviction to be nonpayment of rent? If the rental agreement has been terminated by the first notice to quit, then there is no contractual obligation to pay "rent"; if the first notice was void and a nullity, then the rental agreement continues in effect despite the service of the first notice, and a second action may be brought for nonpayment of rent. Variations on the theme abound; see, e.g., City of Bridgeport v. BarbourDaniel Electronics, Inc., 16 Conn. App. 574 (1988) and HousingAuthority v. Hird, 13 Conn. App. 150 (1988).
In the instant case, the first notice to quit stated nonpayment as the reason for eviction and appears to comport with state law regarding notices to quit. See, e.g., § 47a-23 of the General Statutes.[1] A summary process action was brought when the defendant did not vacate; this summary process action was withdrawn, prior to any judicial resolution, on November 19, 1997. A second notice to quit, forming the basis of this action, was served on November 21, 1997. The second notice to quit claimed nonpayment of rent; the notice to quit appended to the complaint is not dated. The substantive difference between the two notices is that the second notice contains additional language required by federal law in order to terminate of Section 8 rental agreements.
It is clear that if the first notice to quit was a nullity, then it is of no effect and the second notice to quit is effective. If, on the other hand, the first notice to quit was effective at least for the purpose of terminating the rental agreement, then the second notice to quit can not effectively be based on nonpayment of rent, as there would have been to contractual rental agreement in effect at the time. While the rule is easy to state, it is most difficult to apply in many instances.
In Fairfield County, Judge Melville and Judge Tierney adopted a common law test: if the first notice to quit was effective under the common law to terminate a lease, then the second notice to quit is ineffective. See Pelensky v. Alejos, No. SPBR 9604 CT Page 177 31878 (Housing Session 1996) (Tierney, J.); Cohen v. Thorpe, No. SPNO 9011 10511, 3 CONN. L. RPTR. 692 (Housing Session 1991) (Melville, J.); but see City of Bridgeport v. Barbour-DanielElectronics, Inc., supra. In Hartford/New Britain, this court has applied the test of whether the first notice to quit is fatally flawed on its face: "[i]f it is, then it is void. If, on the other hand, reference to another set of facts is necessary in order to determine the validity of the summary process action, then the prior action is not void, even if it may ultimately not be successful."Ethan C. O'Brien v. Alternative Business Interiors, Inc., No. SPN 9611 25298, 19 CONN. L. RPTR. 404 (Housing Session 1996).
The application of either test in this case yields the conclusion that the first notice to quit effectively terminated the rental agreement. The first notice satisfies the common law requirements, and reference to an external set of facts — in this case, knowledge that a § 8 tenancy is involved — is needed to determine the problem with the first notice. Indeed, it is possible that the first notice would have been sufficient as it stood, had a separate notice been provided to comply with federal requirements.
The plaintiff, however, relies on Hird, supra, for support. It is true that the facts of Hird are very close to the facts of this case. In Hird, the Housing Authority issued three successive notices to quit. The summary process action arising from the first notice to quit terminated with a judgment for the defendant. The second summary process action, based upon the second notice to quit, was withdrawn on January 29, after it became apparent that the second notice to quit did not comply with federal regulations. On January 31, two days after the second action was withdrawn, a third notice to quit was served on the defendant; the reason was nonpayment of rent for the month of January. The defendant argued that because the prior notices to quit terminated the rental agreement, there could be no action for nonpayment of rent.
The Appellate Court in Hird disagreed. The court held that the judgment for the defendant in the first case had the effect of reinstating the original rental agreement, and that the withdrawal of the second action had the same effect. As the rental agreement had, at least retroactively, been in effect for the duration, the third action could appropriately be grounded on nonpayment of rent. Hird held, apparently in the alternative, that the defendant could in any event be evicted for nonpayment CT Page 178 of use and occupancy, the amount which would be due in the event that a prior notice to quit had been effective to create a tenancy at sufferance.
Hird was expressly overruled as to the latter ground by the en banc decision of the Appellate Court in Barbour-DanielElectronics, supra; by appearing to hold, at least on the facts of that case, that a notice to quit which is ineffective to provide a basis for a summary process action is also ineffective to terminate a rental agreement, it would appear that Barbour-DanielElectronics may be at odds with the approach adopted in cases such as Cohen v. Thorpe, supra, and Alternative BusinessInteriors, supra. What is clear is that there is little cohesiveness on the issue of dual notices to quit.
Much of the difficulty results from the application of theory, such as expressed in the majority opinion of Barbour-DanielElectronics, to practical situations.[2] If Hird were to be followed in this case in the manner urged by the plaintiff, then a plaintiff would be able to serve a notice to quit which purported to terminate a rental agreement and which most likely would state that any payments received after service of the notice to quit would not be rent, but would be deemed to be use and occupancy payments. Most tenants would not tender rent on receipt of such notice. If a landlord could withdraw the subsequent summary process action and immediately serve a new notice to quit validly alleging nonpayment of rent, a tenant would effectively be blindsided.
I find it significant that the question of how much time, if any, needs to elapse between the withdrawal of one action and a subsequent notice to quit was not raised in Hird. The logic ofHird — that a defendant's judgment and a voluntary withdrawal of an action reinstate the original rental agreement — is unassailable and, of course, this court is bound by holdings of the Appellate Court.[3] In the circumstances of the case at hand, then, I find that the withdrawal of the first action did reinstate the rental agreement. I also find, however, that the withdrawal and consequent reinstatement had the effect of triggering a new grace period pursuant to § 47a-15a of the General Statutes. The second notice to quit was, then, premature, as it was filed two days after the withdrawal of the first action.
The motion to dismiss is granted. CT Page 179
Beach, J.