[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
This is a summary process action initiated by the plaintiff against the defendant with respect to premises located at 187 Broad Street, Apt. #2, Norwich, Connecticut.
The defendant has filed a motion to dismiss the action, alleging lack of jurisdiction.
The following facts, which are not disputed by the parties, are pertinent to this matter.
On September 8, 1999, the plaintiff served a notice to quit upon the defendant for nonpayment of rent in June, 1999.[1] On September 20, 1999, the plaintiff filed a summons and complaint with the court, based on the September 8th notice to quit. The CT Page 16659 defendant answered that complaint by alleging that the September 8th notice to quit was invalid under C.G.S. § 47a-23 (d), because the time period during which the plaintiff could have alleged nonpayment of rent expired in July, 1999.
The plaintiff withdrew the action on October 15, 1999. On October 16, 1999, he served a second notice to quit upon the defendant, alleging nonpayment of rent on October 1, 1999. The October 16th notice to quit is the basis for the instant summary process action, which the plaintiff filed on November 1, 1999.
The first prong of defendant's motion to dismiss is predicated on her claim that the notice on September 8, 1999 terminated the oral month-to-month lease with the plaintiff. She contends that because there was no lease, she was a tenant at sufferance on October 1, 1999, and, hence, was not liable to pay rent.
Alternatively, the defendant argues that even if the plaintiff indicated his intention to enter into a lease with her by withdrawing the first eviction action, the new lease would have commenced on October 15, 1999, and rent would have been due on that date, and not on October 1, 1999. The defendant claims that the October 16, 1999 notice to quit was invalid under C.C.S. § 47-15a, because the statute prohibits a landlord from commencing an eviction action prior to the expiration of a nine-day grace period after the rent is due.
"In the case of a rental on a month-to-month basis, the tenancy is not regarded as a continuous one. The tenancy for each month is one separate from that of every other month." City ofBridgeport v. Barbour-Daniel Electronics, Inc.,16 Conn. App. 574, 585, 548 A.2d 744 (1988); Corriganv. Antupit, 131 Conn. 77, 76, 37 A.2d 697 (1944);Chipman v. National Savings Bank, 128 Conn. 493, 497,23 A.2d 922 (1992); Williams v. Apothecaries HallCo., 80 Conn. 503; 506, 69 A. 12 (1908). "For each month, therefore, there must be a new contract of leasing. Bridgeport v.Barbour-Daniel Electronics, supra, 585; Welk v. Bidwell,136 Conn. 603, 606-607, 73 A.2d 295 (1950); Hour Publishing Co. v.Gorez, 5 Conn. Cir. Ct. 419, 421, 254 A.2d 919 (1968).
The parties in the instant matter do not dispute that the September 8th notice to quit was legally defective. C.G.S.47a-23 (d) provides: CT Page 16660
 "With respect to a month-to-month tenancy of a dwelling unit, a notice to quit possession based on nonpayment of rent shall, upon delivery, terminate the rental agreement for the month in which the notice is delivered, convert the month-to-month tenancy to a tenancy at sufferance and provide proper basis for a summary process action, not withstanding that such notice was delivered in the month after the month in which the rent is alleged to be unpaid."
The court finds that the September 8, 1999 notice to quit, which alleged unpaid rent in June, 1999, should have been served upon the defendant before the end of July, 1999. Its service in September, 1999 was outside the time period permitted by C.G.S. §47a-23 (d). Because of this, that notice to quit was legally ineffective.
Our Appellate Court has held that when a notice to quit is ineffective, it cannot terminate a lease. Bridgeport v.Barbour-Daniel Electronics, Inc., supra, 582. The court noted in this decision that:
 ". . . it is illogical to conclude that an invalid notice to quit has the effect of terminating a lease, while at the same time concluding that an invalid notice to quit cannot sustain a summary process action." Bridgeport v. Barbour-Daniel Electronics, Inc., supra, 584."
Because the court finds that the first notice to quit under date of September 8, 1999 was legally defective, it also finds that it did not terminate the month-to-month tenancy.
Having so found, the court must next determine whether or not the second notice to quit was legally valid under the provisions of C.G.S. § 47a-23 (d) and C.G.S. § 47a-15a.
The problematic issue of multiple notices to quit in summary process cases has been addressed by our Appellate Court inBridgeport v. Barbour-Daniel Electronics, Inc., supra, and inHousing Authority v. Hird, 13 Conn. App. 150 (1988).
In Bridgeport v. Barbour-Daniel Electronics, Inc., the plaintiff initially filed a notice to quit for nonpayment of rent on May 1, 1986. Recognizing that the first notice was legally defective, the plaintiff did not commence a summary process CT Page 16661 action and, instead, served a second notice to quit on the defendant on June 12, 1986. As noted above, the Appellate Court held that the first notice to quit was defective and could not terminate the month-to-month tenancy. The court also upheld the validity of the second notice as the legal basis for the plaintiff's summary process action, which was served on June 25, 1986. Bridgeport v. Barbour-Daniel Electronics, Inc., supra, p. 585.
The Hird matter involved three successive notices to quit. The eviction action which began after the first notice ended with a judgment in favor of the defendant on November 6, 1985. The next eviction action, which was based on a November 15, 1985 notice to quit was withdrawn on January 29, 1986, after the plaintiff realized that the second notice to quit was statutorily defective. On January 31, 1986, two days after the withdrawal, the plaintiff served a third notice to quit which alleged nonpayment of rent. The defendant contested claiming that the earlier notices had terminated the rental agreement. The defendant maintained that she was, therefore, a tenant at sufferance and, as such, was not obligated to pay rent.
The Appellate Court ruled that the plaintiff's "failure to pay rent or a fair rental value for use and occupancy . . ." for the month of January, 1986 authorized plaintiff to issue the third notice to quit. Housing Authority v. Hird, supra, p. 158.
The alternative holding in Hird that nonpayment of use and occupancy constituted a proper ground for eviction was overruled by the Appellate Court in its subsequent Bridgeport v.Barbour-Daniel Electronics, Inc. decision. "Although we need not address the issue we note that had we been confronted with deciding the issue, we would have concluded, as does the dissent, that nonpayment of use and occupancy is not a proper ground for eviction and, therefore, cannot sustain a summary process action." Bridgeport v. Barbour-Daniel Electronics, Inc., supra, p. 581.
Of particular significance in the Hird decision is the language which states that an original, lease can be "revived," "restored" and returned to its original "status quo" by a defendant's judgment in the eviction action, and by the plaintiff's withdrawal of the summary process proceeding due to a defective notice to quit. The Appellate Court stated:
CT Page 16662
 "The withdrawal of the summary process action on January 29, 1986 effectively erased the court slate clean as though the eviction predicated on the November 15, 1985 notice to quit possession had never been commenced. The plaintiff and the defendant were "back to square one," and the continuation of their lease of January 9, 1981 was restored. Housing Authority v. Hird, supra, p. 157.
Similarly, Judge (now Justice) David Borden wrote in his dissent in Bridgeport v. Barbour-Daniel Electronics, Inc., that: ". . . the lease or tenancy under which the parties operated prior to the notice to quit will be revived . . ." by a judgment for the tenant in a subsequent summary process action, or by notice to the tenant that the landlord has withdrawn a previously issued notice to quit. Bridgeport v. Barbour-Daniel Electronics,Inc. supra, p. 595.
Based on the forgoing authority, and under the facts of this case, the court finds that the withdrawal of the summary process action on October 15, 1999 revived and restored the parties' original month-to-month rental agreement.
The question which remains is whether or not that event triggered a new, nine-day grace period under C.G.S. §47a-15a.[2] The court must resolve whether the rent became due retroactively on October 1, 1999, or on October 15, 1999, when the summary process action was withdrawn.
The court does not find the resolution of this issue in either the Bridgeport v. Barbour-Daniel Electronics, Inc.
decision or the Housing Authority v. Hird ruling. The former case involved two successive notices to quit. The plaintiff did not commence a summary process action based on the May 1st notice, and subsequently served the second valid notice to quit on June 12th. The holding in Hird is alternatively predicated on the now overruled premise that an eviction can be based on failure to pay rent or use and occupancy. (Emphasis added.)
However, the case of Sammy Redd Associates v. Mary May, Superior Court, Judicial District of Hartford/New Britain Housing Session at Hartford, No. SPH 95376 (January 16, 1998) is highly analogous to the case at bar.
In that matter, the first notice to quit, which failed to comport with federal regulations for Section VIII housing CT Page 16663 tenants, was served on the defendant, and a summary process action was subsequently commenced based on that notice. That action was withdrawn without any judicial resolution on November 19, 1997. A second notice to quit, for nonpayment of rent was served on November 21, 1997.
In the summary process action based on that notice, Judge Robert Beach found in accordance with Bridgeport v.Barbour-Daniel Electronics, Inc. that the lease was not terminated by the defective first notice to quit, and that the withdrawal of the initial summary process action reinstated the parties' rental agreement.
Judge Beach also confronted the issue of whether or not the second notice to quit, served two days after the first action was withdrawn, was timely under C.G.S. § 47a-15a.
Judge Beach notes in his decision that:
 "if Hird were to be followed in this case in the manner urged by the plaintiff, then a plaintiff would be able to serve a notice to quit which purported to terminate a rental agreement and which most likely would state that any payments received after service of the notice to quit would not be rent, but would be deemed to be use and occupancy payments. Most tenants would not tender rent on receipt of such notice. If a landlord could withdraw the subsequent summary process action and immediately serve a new notice to quit validly alleging nonpayment of rent, a tenant would be effectively blind-sided. Sammy Redd Associates v. Mary May, supra, p. 5.
The court found in Sammy Redd that the withdrawal of the eviction action and reinstatement of the rental agreement initiated a new grace period under C.G.S. § 47a-15a. Because of this, it ruled the second notice to quit, filed two days after the withdrawal, was premature and granted the defendant's motion to dismiss.
The facts in the present case are similar.
The September 8, 1999 notice to quit was defective. It was the basis for the September 20, 1999 summary process action. The plaintiff withdrew the action, without judicial resolution, on October 15th. On the following day, he issued the second notice CT Page 16664 to quit, claiming nonpayment of rent for October, 1999. The second notice to quit constituted the legal basis for this action, which was filed on November 1, 1999.
Under the foregoing sequence of events, the defendant was afforded little or no opportunity to pay rent during October, 1999. During the time period which is the focal point of the plaintiff's present complaint (October 1, 1999 until October 15, 1999), the plaintiff's prior action for eviction was pending against the defendant. Accordingly, the plaintiff's articulated legal position at the time in question was that the parties' month-to-month tenancy had been terminated, and that the defendant was then a tenant at sufferance.
Although the withdrawal on October 15th restored the rental agreement — and the defendant's obligation to pay rent — the October 16th notice to quit foreclosed the defendant's ability to comply.
The court finds that the withdrawal of the first summary process action, which reinstated the month-to-month tenancy, triggered a new nine-day grace period pursuant to C.G.S. §47a-15a. It finds that the rent became due on October 15, 1999.
Because the October 16, 1999 notice to quit was served on the defendant one day after the parties' lease agreement was restored, it was premature and statutorily defective under C.G.S. § 47a-15a. A valid notice to quit ". . . is a condition precedent to the bringing of a summary process action by the lessor."Bridgeport v. Barbour-Daniel Electronics, Inc., supra, p. 582;O'Keefe v. Atlantic Refining Co., 132 Conn. 613, 622, 46 A.2d 343
(1946).
Accordingly, this court finds that it lacks subject matter jurisdiction and grants the defendant's motion to dismiss.
Dyer, J.