[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a summary process action. The plaintiff and the defendant entered into a written lease on November 30, 1998. The premises were demised until March 31, 2000, and rental payments of $2,100 per month were provided for in the lease. The lease provided, in an addendum, that if the defendant remained after March 31, 2000, the monthly "use and occupancy" would be $4,100 per month, which amount reflected the plaintiff's cost in "carrying" the property.
March 31 came and went, and the defendant remained on the property. The parties had a conversation in April, 2000. Although recollections of that conversation differ the version which makes the most sense to me, and which I credit, is that the parties agreed that because of the defendant's financial setbacks and to provide an incentive to leave,[1]
the defendant could pay $2,100 per month for the months of April and May if he left by the end of May. If he did not leave by the end of May, then the previously agreed upon sum of $4,100 was the amount per month which was payable in return for possession of the premises.
In any event, the defendant neither paid nor left, and a notice to quit was served on May 17, 2000. The notice to quit stated as grounds for eviction nonpayment of rent and originally had right or privilege but such right or privilege has terminated. The first complaint based on that notice to quit was withdrawn because it was served too early. The second complaint based on that notice to quit was dismissed because of an application of Housing Authority v. Hird, 13 Conn. App. 150 (1988). Both complaints alleged nonpayment of the rent due in the amount of $2,100 under a month to month lease and the termination of a right or privilege to occupy the premises.
A second notice to quit, which provides the jurisdictional basis for this action, was dated August 15, 2000, and served on August 21, 2000. This notice to quit states as grounds for eviction lapse of time, nonpayment of rent, and termination of right or privilege. The complaint based on this notice to quit alleges the same grounds as causes of action. The complaint alleges nonpayment for the months of July and August and claims that $4,100 per month was due; as to termination of the right or privilege to occupy the premises, the complaint alleges that the CT Page 12721 prior notice to quit terminated the tenancy.
One motion to dismiss this action was summarily denied by the court. A second motion to dismiss was filed on the morning of trial. The parties agreed that, because of the timing, the evidence regarding both the motion to dismiss and trial on the merits would be presented at the same time.
The motion to dismiss filed on October 23, 2000, seems to claim that the notice to quit is rendered ambiguous because of the subsequent actions of the landlord alleging monthly rent of $2,100. Compare 617 ParkStreet Limited v. Diakomanolis, H-1034 (DiPentima, J.) (1994). One difficulty with the motion to dismiss is that there is no arguably ambiguous act occurring after service of the August notice to quit on which this action is based: the allegations regarding the monthly rent of $2,100 were made in May and June, and the instant notice to quit was served in August. For this reason, as well as factual considerations mentioned below, the motion to dismiss is denied.
The merits of the controversy are logically interesting. The lease, it will be recalled, provided for holdover payments of $4,100 per month. As a general principle, a tenant holding over after the termination of the period of time provided for in a written lease enters into a tenancy at will; where the written lease provided for monthly payments, a month to month tenancy is presumed. See, e.g., §§ 47a-3b and 47a-3d of the General Statutes; Larson v. Timothy's Ice Cream, Inc., SPBR 9505 29502 (Tierney, J.) (19995); Beuchert v. Joyce, SPH 89045 (Beach, J.) (1996). In the case at hand, specific provision was made in the written lease for monthly payments in the amount of $4,100 per month should the tenant hold over.[2] It should be noted that the tenant testified that his understanding after the April conversation was that a month to month tenancy with a monthly rent of $2,100 was created, and it is true that a prior complaint, which now constitutes an evidential but not a judicial admission, alleged a month to month tenancy with monthly rent of $2,100. In the circumstances, I find it more likely than not that both sides understood that the rent of $2,100 was a discounted rental good for two months only, and that after that the agreed upon rent would be $4,100. I do not find, then, that any lack of a meeting of the minds created a termination of the leasing agreement.
Ordinarily, of course, the service of the first notice to quit in May would have the effect of being an unequivocal act terminating the leasing agreement, assuming that the notice to quit was valid on its face. See, e.g., Borst v. Ruff, 137 Conn. 359 (1950); compare City of Bridgeport v.Barbour-Daniel Electronics, Inc., 16 Conn. App. 574 (1988). If the leasing agreement were effectively terminated, and there was no new CT Page 12722 agreement or reinstatement of a pre-existing agreement, then there could be no cause of action based on nonpayment of rent or on lapse of time at the time of the August notice to quit. In this case, however, the dismissal of the prior case had the effect of nullifying the prior notice to quit, such that after the dismissal the parties continued the tenancy on the basis of the prior agreement: a month to month tenancy at the rate of $4,100 per month. Housing Authority v. Hird, supra.[3] Because it is agreed that there has been no payment for the months of April through October, the plaintiff has proved his complaint as to the nonpayment count.[4]
Because I find that a month to month tenancy existed at the time of the August notice to quit, the count alleging termination of a right or privilege to occupy is not proved. I would note, however, that even if my analysis of the effect of the prior notice to quit under Hird is faulty, there still is no great injustice, because in that event the tenancy would have been terminated and the plaintiff has included a count so alleging.
The defendant also filed a number of special defenses. On September 27, 2000, he filed five special defenses. The first alleged conditions claimed to constitute uninhabitability. On the evidence presented, I find the claim to be without merit: although there were occasional problems, such as occasional mice and some wetness, there was no serious threat to health and safety such to render the premises unfit and uninhabitable. See Buffington v. Antonucci, SPNH 9802-53842 (Levin, J.) (1998); Na-Mor,Inc. v. Espinosa, CV 18-6889 (Frazzina, J.) (1999). The second defense alleges that too much rent was demanded in advance, and that interest has not been paid. This defense has not been pursued. The third defense alleges a variance in position from the prior complaints. There is no compelling reason why allegations must be consistent, particularly where, as in this case, a party claims that a prior complaint was mistaken. There is no merit to the fourth special defense, and it has not been pursued. The fifth special defense alleges that the notice to quit in the instant case is defective because the parties were in August no longer proceeding according to the written lease. This concern has been addressed.
Amended special defenses were filed roughly contemporaneously with trial. The first raises issues of habitability. As stated above, I find the defects to be minor and to have no effect on habitability. The second special defense depends on the first, and I do not find it proved. Finally, the defendant claims that the action is retaliatory, because the defendant allegedly complained of conditions to the plaintiff. The defense of retaliation is not applicable to a cause of action based on nonpayment. See § 47a-20a(a) of the General Statutes. Further, the CT Page 12723 complaints must involve serious conditions of substance; see Na-mor, supra; otherwise, a tenant could conceivably avoid eviction on the ground of lapse of time virtually forever. I do not find that substantial complaints were lodged in this case.
Judgment may enter for the plaintiff.
Beach, J.