DREW FRIEDMAN *v.* MILLPIT CORPORATION ET AL.
(AC 16753)

Spear, Hennessy and Shea, Js.

Argued March 24—officially released July 7, 1998

---

*Richard J. Shapiro*, for the appellants-appellees (defendants).

*Hale C. Sargent*, for the appellee-appellant (plaintiff).

*Opinion*

SHEA, J. The defendants, Millpit Corporation (Millpit), Bernice Miller and Jeff Miller, appeal from a judgment awarding the plaintiff, Drew Friedman, doing business as Library Associates, damages with interest and attorney's fees for breach of a commercial lease. The plaintiff cross appeals to contest the trial court's calculation of damages. We affirm the judgment on liability as to the defendants Millpit and Bernice Miller but reverse the judgment against Jeff Miller.[1] We sustain the cross appeal and remand the case for further proceedings with respect to damages.

On March 23, 1987, Friedman, the landlord, and Millpit, the tenant, executed a lease for a portion of a building in the town of Westport for use as a retail shoe store for a term of ten years commencing April 1, 1987, and ending March 31, 1997. The rent of $6000 per month was subject to yearly increases based on the consumer price index. Bernice Miller, who signed the lease as president of Millpit, also signed a guarantee of performance for the tenant's obligations under the lease. Millpit was required to pay the expenses of the landlord,

---

[1] The defendants claim in their reply brief that the judgment should be reversed as to Jeff Miller because no cause of action was pleaded against him. We agree. He is not named as a defendant in the revised complaint filed by the plaintiff, and the record does not otherwise disclose the basis for imposing liability on him.

including attorney's fees, in enforcing the tenant's obligations under the lease. The guarantee imposed a similar obligation on Bernice Miller.

In late 1990, Friedman commenced a summary process action against Millpit to obtain possession of the premises because of a substantial rent arrearage. He filed a separate action for the delinquent rent against both Millpit and Bernice Miller. Millpit claimed that it had withheld the rent justifiably because of a leaky roof, a dispute over the calculation of the yearly rental increases based on the cost of living adjustment clause and the landlord's placement of a dumpster in front of the shoe store. On February 7, 1991, before trial of the summary process action, the parties agreed to settle the two lawsuits and the various disputes between them. Millpit, acting through Jeff Miller, who had replaced Bernice Miller, his mother, as president of the corporation, signed a stipulation with Friedman for that purpose. Bernice Miller, who had participated in the negotiations, refused to sign the stipulation.

The stipulation provided that the lease was reinstated and that the back rent of $19,060.80 would be paid into an escrow account until the landlord made arrangements to relocate the dumpster. It gave the landlord an option to terminate the reinstated lease that would expire on March 15, 1991, and gave the tenant an option to terminate the lease if the landlord did not relocate the dumpster by June 30, 1991. The stipulation also provided that the eviction action would be withdrawn on March 19, 1991, if Millpit had paid the back rent to the escrow account and had also paid the February and March, 1991, rent installments by that date.

Neither option to terminate the lease was exercised, and the pending lawsuits were withdrawn. Millpit, however, paid only $17,534.83 of the $19,060.80 arrearage, leaving a balance of $1525.97. Later, the arrearage for

rent began to increase. On October 24, 1991, Friedman wrote a letter to Millpit in which he claimed that Millpit would owe $15,617.74 as of November, 1991. On November 12, 1991, Millpit wrote a letter to Friedman, stating that it had to reduce its monthly rental payment to $5000 and that it would not pay the escrow balance. In December, 1991, Millpit sent a monthly rental payment of $5000 to Friedman and continued to do so through November, 1993. On January 30, 1992, Friedman sent a letter claiming that Millpit was in arrears by $8729.95 and requesting payment of that sum before any discussion of "possible relief for [Millpit] in the future."

Friedman continued to dun Millpit with letters concerning the rent arrearage, which had grown to $94,844.57 by November 18, 1993, to which Millpit responded with a request to revise the lease. Finally, in December, 1993, Friedman brought an eviction action that resulted in a stipulated judgment of possession with a stay of execution through March 31, 1994. Millpit did not vacate the premises, however, until about April 15, 1994. It did, however, pay a use and occupancy charge of $6000 per month for February and March, 1994.

Friedman brought the present action against Millpit, Bernice Miller and Jeff Miller in May, 1994, to collect the unpaid rent with accumulated interest in the total sum of $111,700.88 for the period, April 1, 1991, through January 31, 1994. The complaint sought an additional $30,743.96 for the loss of rent for the months of April, May, June and July, 1994.

The trial court rendered judgment against the defendants for $54,527.21 plus interest of $39,134.21 and attorney's fees of $14,447.02.[2] The court held that the

---

[2] Although the judgment file indicates that the award of $14,447.02 was for interest and the award of $39,134.21 was for attorney's fees, the transcript of the court's decision, which was rendered orally, provides that $39,134.21 was for interest and $14,447.02 was for attorney's fees.

notice to quit served on Millpit when the first summary process action began in late 1990 effectively terminated the lease and that Millpit became a tenant at sufferance thereafter. It regarded as ineffective the declaration in the stipulation of February 7, 1991, that "the lease and its terms and guaranty shall be reinstated and in full force and effect, and shall be binding on the parties hereto" because Bernice Miller had refused to sign the stipulation, despite the finding that the stipulation did not increase the guarantor's exposure.[3] The court concluded that Millpit became liable to pay a reasonable charge for use and occupancy of the premises while it continued to remain in possession as a tenant at sufferance. It found that the amount set forth in the stipulation of February 7, 1991, $6888.49 per month for use and occupancy, was the fair rental value of the premises during the period, February, 1991, through February, 1994, and used that figure in calculating the award of damages.

I

We disagree with the trial court's conclusion that Friedman's service of a notice to quit in the summary process action that led to the stipulation of February 7, 1991, terminated the lease and that the refusal of the guarantor to sign the stipulation prevented its provision for reinstatement of the lease from being effective. The court incorrectly equated a notice of intent to terminate a lease with actual termination of the lease. In *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 582–85, 548 A.2d 744, cert. denied, 209 Conn. 826,

---

[3] A modification of the obligation between the principal obligor and the obligee does not discharge the secondary obligor or surety unless "the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification . . . ." Restatement (Third), Suretyship and Guaranty § 41 (b) (i), p. 184 (1996); see *American Oil Co.* v. *Valenti*, 179 Conn. 349, 353–54, 426 A.2d 305 (1979).

552 A.2d 432 (1988), this court held that a notice to quit containing a statement that a lease was terminated did not effectuate such a termination because untimely service of the notice rendered it invalid and, therefore, a nullity. "Indeed, it is self-evident that if the notice is invalid, then the legal consequence of 'termination' arising from the service of a valid notice does not result." *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989). In *Bargain-Mart, Inc.*, a case similar to this appeal, that principle was applied when the tenant in a summary process action had raised special defenses contesting the right of the landlord to terminate the lease for nonpayment of rent, but the issues raised by those defenses were never adjudicated because the suit was settled by a stipulated judgment agreeable to the parties. Id., 134. "Because the trial court in the summary process action did not determine whether the notices to quit were valid, we have no basis for concluding that those notices terminated the [lease]." Id., 135.

We reach a similar conclusion in this case. Because there never was any determination of the right of the landlord to terminate the lease in the summary process action begun in 1990, which Millpit contested, the lease remained in effect and the agreement to reinstate it contained in the stipulated judgment was superfluous. As the lease was not terminated until Friedman brought another summary process action in December, 1993, the finding of the trial court that when the stipulation of February 7, 1991, was signed by Friedman and Millpit, there was "no meeting of the minds with respect to the reinstatement of the lease" is of no consequence.[4] We conclude that the lease remained in effect until it was

[1] We recognize that the stipulation did modify the lease by giving both the lessor and lessee options to terminate that expired without being exercised, and settling disputes over the back rent and the location of the dumpster. None of the provisions of the stipulation, however, affected the judgment or imposed additional risks on the surety.

terminated by the notice to quit in the second summary process action.[5]

## II

In calculating the award of damages, the trial court relied on the stipulation of February 7, 1991, in which Friedman and Millpit agreed that the back rent, including assessments, was $19,060.80. The court also decided that a reasonable charge for use and occupancy of the premises after that date was $6888.49 per month, the amount set forth in the stipulation for use and occupancy during the four month period following a possible exercise of the landlord's option to terminate the lease.[6] Our conclusion in part I of this opinion that the lease remained in effect until the second summary process action in December, 1993, necessitates a recalculation of the damages accruing after February 7, 1991, using rental charges calculated pursuant to the terms of the lease.[7]

On the appeal, the judgment against Jeff Miller is reversed; on the cross appeal, the judgment against Millpit and Bernice Miller is reversed as to damages only, and the case is remanded for further proceedings regarding damages in accordance with this opinion.

In this opinion the other judges concurred.

---

[5] Our conclusion that the lease remained in force until the second summary process action in December, 1993, makes it unnecessary to discuss the remaining claims raised by the defendants.

[6] This option to terminate was never exercised and it expired on March 15, 1991.

[7] The trial court reduced its damages calculation by $6000, the amount of the security deposit given by Millpit at the time the lease was executed on March 23, 1987. Friedman testified that the deposit was applied to the rent accruing during the period May 15, 1987, to June 15, 1997, and this testimony was not controverted at trial. The court made no express finding on this subject, but simply credited the security deposit against the damages for unpaid rent and use and occupancy charges. This court cannot decide this issue on the record before us and will leave it to be determined in the further proceedings that we have ordered.