[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MOTION FOR REARGUMENT, RECONSIDERATION, AND/OR REARGUMENT EN BANC
Pursuant to Practice Book Section 71-5, the Defendants-Appellants move for reargument, reconsideration, or reargument en banc of the decision in this case published July 7, 1998, 49 Conn. App. 354. (The decision will be referred to herein as "Opinion".)
I. HISTORY OF THE CASE
Plaintiff brought an action in May, 1994 to recover money damages arising out of a commercial landlord/tenant relationship. The trial court had found that by his actions surrounding a previously filed summary process action that the landlord had terminated the lease, and rendered a decision in part predicated upon that issue. This Court reversed the trial court decision on CT Page 8465 the basis that the notice to part in such earlier action did not terminate the lease, and remanded the case to the trial court for a recalculation of damages in accordance with its opinion.
II. FACTS RELIED UPON
In the trial, evidence was admitted which showed that there had been prior litigation between these parties, including an action for summary process and an action for damages. In that prior summary process action there had been no issue regarding the validity of the notice to quit. Following the resolution of those actions by way of a "Stipulation" the tenant reduced the amount it was paying to $5,000 per month, leading to substantial correspondence between the parties over a two year period. In that correspondence the landlord threatened repeatedly to take legal action to cause the eviction of the tenant from the premises.
The trial court found that the lease had been terminated by the actions of the parties. It stated several reasons for its finding that there was a termination of the lease. These included the service of the notice to quit[1], the filing of the summary process action[2], and the statements of the landlord threatening to invoke legal action[3]. The trial court also specifically addressed the claim that only a judgment in the summary process could confirm the termination of the lease, and rejected this on the facts found[4].
III. LEGAL BASIS
1. The Appellate decision is in conflict with established lawregarding the meaning and effect of a notice to quit.
The Appellate decision is in conflict with years of Connecticut law on the meaning of a notice to quit and in the operation of our summary process procedures. In addition, the opinion applies precedent that is inapplicable to the facts of this case.
In the pending matter there was never a dispute over the validity of the notice to quit that was served by the plaintiff in 1991. The findings of the trial court, accepted by this Court in its decision, included that there had been a rental arrearage that preceded the issuance of the notice to quit[5]. Following that, the plaintiff not only served a notice to quit, but CT Page 8466 commenced a summary process action. As discussed below, each of those actions was sufficient to terminate the lease, although this Court's opinion only discusses the notice to quit.
This Court's opinion states that the trial court erred in finding that the notice to quit acted to terminate the lease and that the trial court "incorrectly equated a notice of intent to terminate a lease with actual termination of a lease" (Opinion49 Conn. App. at 358). The precedent cited to support this conclusion, however, arose in cases where there was a question as to the validity of the notice to quit, a question entirely absent from the pending case. In Bridgeport v. Barbour-DanielElectronics, Inc. 16 Conn. App. 574, 548 A.2d 744, cert. denied,309 Conn. 226, 552 A.2d 432 (1988) there was an admittedly defective notice to quit, and in Bargain Mart, Inc. v. Lipkis,212 Conn. 120, 561 A.2d 1365 (1989) there was a special defense challenging the notice to quit that was never reached by the trial court[6]. Nowhere in the facts of the case at bar is there a dispute as to the validity of the notice to quit. As such, the applicability of those cases is questionable, and reconsideration or reargument as to that issue is appropriate.
To rule that a notice to quit does not effect a lease termination, or does not do so without some other "determination" that the landlord had the right to terminate the lease (Opinion,supra at 359) is in conflict with the underlying theory behind our summary process law as set forth in numerous opinions[7].
 "A breach of a covenant to pay rent does not automatically result in the termination of a lease. Rosa v. Cristina 135 Conn. 364, 64 A.2d 680 (1949). The failure to pay rent gives the landlord a right to terminate the lease. Id. In order to terminate a lease, a landlord must perform some unequivocal act which clearly demonstrates his intent to terminate the lease. Chapel-High Corporation v. Cavallaro, 141 Conn. 407, 411 106 A.2d 720 (1954)." Bridgeport, supra, at 583, footnote 8.
The unequivocal act need not be in any form, and the notice to quit is but one form of words or deeds that can evince the unequivocal act necessary to terminate the lease. Bridgeport,supra, at 583, footnote 9, citing Sandrew v. Pequot Drug, Inc.4 Conn. App. 627, 495 A.2d 1127 (1985).
CT Page 8467
That the service of a notice to quit is, in fact, such unequivocal notice of the termination of the lease had been repeatedly set forth. "The issuance of the notice to quit is the undeniable exercise of this option [to terminate the lease]. SeeChapel-High Corporation v. Cavallaro, 141 Conn. 407, 411106 A.2d 720 (1954); Kovner v. Dubin, 104 Conn. 112, 118, 132 A. 473
(1926); 2 Tiffany, Landlord and Tenant p. 1769." Bushnell PlazaDevelopment Corporation v. Fazzano, 38 Conn. Sup. 683, 686,460 A.2d 1311 (1983); Borst v. Ruff, 137 Conn. 359, 361, 77 A.2d 343
(1950); Rivera v. Santiago, 4 Conn. App. 608, 610, 495 A.2d 1122
(1985); Mayron's Bake Shop, Inc. v. Arrow Stores Inc., 149 Conn. 149,156, 176 A.2d 574; Messinger v. Laudano, 4 Conn. App. 162,163, 493 A.2d 255, cert. denied, 196 Conn. 812, 495 A.2d 279
(1985). The holding herein that a notice to quit is not an unequivocal act which terminates a lease, especially under the facts of the pending case, is clearly in conflict with this line of cases.
There is no requirement that a judgment enter in a summary process action before the termination is deemed to occur, nor to "confirm" the effect of the unequivocal act which terminated the lease. In fact, our law is precisely to the contrary. This is essential because the termination must actually occur prior to a summary process action. "The necessary and only basis of a summary process proceeding is that the lease has been terminated.Webb v. Ambler, 125 Conn. 543, 550, 7 A.2d 228 (1939); Feneck v.Nowakowski, 146 Conn. 434, 436, 151 A.2d 891 (1959.)" Bridgeport,supra at 584. The Supreme Court in Bargain Mart, supra at 135, specifically rejects the claim that a summary process judgment is required to terminate a lease, and notes that its holding only
recognizes that an invalid notice to quit will not terminate a lease. Defendant's respectfully request reargument, or reargumenten banc if that holding is to be extended by this Court's opinion.
Our law also provides, prior to any judgment or other "determination", that upon the termination of a lease following a notice to quit that the tenant becomes a tenant at sufferance.Bargain Mart, supra at 136; Bushnell Plaza, supra at 686. While there may be occasion for the lease to come back into play, such as when the tenant prevails at a summary process trial, the fact remains that the lease was terminated by the unequivocal act, and is subject to being later revived. As stated by Judge Borden in his dissent in Bridgeport, judgment for the tenant or a withdrawal of a summary process action will revive a lease, but CT Page 8468 between the service of the notice and the revival of the lease, the tenant is a tenant at sufferance, and during that time, the lease is terminated. Bridgeport, supra at 595 (dissent footnote 8).
Because there were no issues regarding the validity of the notice to quit in the pending case, the cited cases of Bridgeport
and Bargain Mart should not apply, and reargument or reconsideration in that regard is requested. To the extent that the opinion holds that a notice to quit is not accepted as an unequivocal act which terminates a lease, even where there exists no issue with regard to a notice to quit, it is in conflict with other decisions, and reconsideration, or reargument, or reargument en banc is requested given the importance of this issue to future summary process litigation.
2. The Opinion does not take into account other trial courtfindings, not clearly erroneous, that the lease had beenterminated.
In its decision, this Court disagreed with the trial court's conclusion finding a termination based upon the service of a notice to quit, and held that the lease was never terminated.
As set forth in Section II, above, the trial court made numerous findings in addition to the those regarding the notice to quit that went into its decision that there had been a termination of the lease. The court found that the termination occurred not merely by the service of the notice to quit, but also by the filing of the summary process action. Initiating a summary process action is an unequivocal act that shows the exercise of the option to terminate, Bargain Mart, supra at 132. The Stipulation was entered into at the courthouse by the parties when they appeared for the trial of the action and the trial court heard much disputed testimony as to the negotiations leading up to the entry of the Stipulation. This Court's opinion overlooks these trial court findings, not clearly erroneous, which demonstrate a termination of the lease regardless of the notice to quit issue.
In addition, the trial court found that the later correspondence of the landlord "clearly" evidenced his termination of the lease (Tr. 11/21/96, p. 9, line 25). This Court's decision should be reconsidered in that it was limited solely to the effect of a notice to quit, and did not address CT Page 8469 these additional findings of the trial judge specifically related to the termination issue.
3. The terms of the remand should be reconsidered in light of thefactual nature of the trial court's decision, and the subsequentrelationship between the parties.
Even if this Court does not change its position that the notice to quit did not, in and of itself, terminate the lease, the matter should be remanded for retrial to consider all the facts involved in the relationship between the parties. The issue of whether there was an unequivocal act which terminated the lease is a factual decision, as would be consideration of the long period of time that is at issue in this case. The parties continued a relationship for approximately three years following the issuance of the notice to quit that has been under discussion. The landlord accepted reduced monthly payments for two years before commencing the final summary process action.
The trial court decision was heavily fact based and related to a lengthy time period, but was premised in part upon a ruling that may now be reversed. The defendant's urge the court to reconsider the terms of the remand to order the retrial of the matter consistent with its Opinion. To do otherwise is to ignore the complicated factual issues that follow the notice to quit, which itself was related to a completely different lawsuit, with completely different issues than the pending action. Because so many parts of the complicated trial court decision were intertwined in the portion that may be reversed, it would be inappropriate to reverse on one legal premise without putting the entire matter back before the trial court's consideration.
4. The terms of the remand should be reconsidered in light of thetrial court finding of a termination subsequent to the notice toquit.
Even if remanded on the issues discussed above, this Court's decision does not take into account the trial court's finding of a termination of the lease subsequent to the notice to quit. As stated above, there was substantial testimony and exhibits concerning the landlord's threats to refuse to acquiesce in the lowered monthly payments, which threats included taking legal action. The trial court held, "clearly the statements by Drew Friedman threatening legal action coupled with the service of notice to quit evidence the exercise of his option of terminating CT Page 8470 the lease contract". (Tr. 11/21/96 p. 9-10).
Any remand should have the trial court take into account such termination by the subsequent conduct of the landlord even if the ruling remains that the notice to quit did not initially terminate the lease. Again, this trial court finding was not found to be clearly erroneous, and a remand without consideration of this issue would improperly deprive the defendants of proper factual findings made by the trial court.
THE DEFENDANTS/APPELLANTS
By _____________________
Richard J. Shapiro Weinstein, Weiner, Ignal, Napolitano Shapiro PO Box 9177 Bridgeport, CT 06601 (203) 333-1177 Juris: 66912
 CERTIFICATION
RICHARD J. SHAPIRO, JUDGE.
This is to certify that a copy of the Motion for Reargument, Reconsideration, and/or Reargument En Banc has been mailed this day to:
The Honorable Leonard M. Cocco Superior Court Housing Session
17 Belden Avenue Norwalk, CT 06850
Hale C. Sargent, Esquire Sargent Sargent
830 Post Road East Westport, CT 06880
Richard J. Shapiro Weinstein, Weiner, Ignal, Napolitano Shapiro, P.C. PO Box 9177 Bridgeport, Connecticut 06601 (203) 333-1177 Facsimile (203) 384-9832 Juris # 66912 CT Page 8471